## FRANK v. SCHNUETTGEN.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1911.)

No. 3,025.

1. SPECIFIC PERFORMANCE (§ 20*)—CONTRACTS ENFORCEABLE—CONTRACT BY PART OWNER FOR SALE OF LAND.

A part owner of a tract of land who joins in a contract to sell the entire tract and subsequently becomes the sole owner may be compelled to convey the same if the case is otherwise one for specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 48; Dec. Dig. § 20.*]

2. VENDOR AND PURCHASER (§ 33*)—CONSTRUCTION—INABILITY OF PARTY TO READ—REPRESENTATIONS BY OPPOSITE PARTY.

Where a contract giving an option to purchase land was prepared by the vendor, and the purchaser was unable to read or understand Eng-

lish, in which language it was written, oral statements made to him by the vendor as to its contents are binding on the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38–44; Dec. Dig. § 33.*]

3. SPECIFIC PERFORMANCE (§ 57*)—CONTRACTS ENFORCEABLE—OPTIONS.

A contract giving an option to purchase land to be exercised within a stated time, if based on a good consideration and if accepted within that time, is valid, and may be specifically enforced by the purchaser.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 178; Dec. Dig. § 57.*]

4. SPECIFIC PERFORMANCE (§ 114*)—RIGHT TO RELIEF—CONTRACT FOR SALE OF LAND.

A bill alleged that complainant's deceased husband, who by his will made her his sole devisee and legatee, in his lifetime made an agreement with defendant and another, who were owners of 300 acres of land, to purchase the same at $100 per acre; that, being unable to raise all of the money, it was afterward agreed that he should purchase 50 acres at $250 per acre, and should have a contract to purchase the remainder for $70 per acre at any time within 5 years, in the meantime to have possession of all of the land and pay rent for that not paid for; that he paid for the 50 acres, received a deed therefor, and went into possession of all of the land, receiving also what he supposed and was told by defendant was a contract for the remainder in accordance with the agreement, he being unable to read or understand English; that within a year or so thereafter he tendered payment for the remaining land, but defendant, who had become sole owner, claimed that he was not bound to receive the money and make the conveyance until the expiration of the five years. The bill set out a copy of the contract which was in the form of an offer to sell the land to deceased at $70 per acre, but specified no time. The bill further alleged that complainant was still in possession of the land, and that after the death of her husband, and her appointment as executrix and within the five years, she again tendered payment for the land, but defendant refused to carry out the agreement, and she prayed for specific performance. It was further alleged that the amount paid for the 50 acres was largely in excess of its value; the understanding being that the excess should apply on the purchase price of the remainder. *Held*, that the bill stated a cause of action.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 356–372; Dec. Dig. § 114.*]

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Suit in equity by Mary Frank against John Schnuettgen. Decree for defendant, and complainant appeals. Reversed.

Byers, Lockwood & Byers and Jacob Sims, for appellant.
William Gardner and G. W. Cullison, for appellee.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

PER CURIAM. This is an appeal from a judgment dismissing appellant's bill upon general demurrer. The action of the trial court in so doing is assigned as error.

Appellant stated her cause of action as follows:

Mary Frank of Earling, Iowa, a citizen and resident of the state of Iowa, brings this her amended and substituted bill of complaint, leave of court having heretofore been granted to her for that purpose, against John

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Schnuettgen, a resident of Omaha, state of Nebraska, and thereupon your orator complains and says:

I. That on or about the 19th day of January, 1903, the defendant, John Schnuettgen, and one Charlotte Gardner, were the owners of about 300 acres of land in section 32, Union township, Shelby county, Iowa. That on or about said date the husband of this orator, Ernest Frank, now deceased, commenced negotiations with the defendant and said Charlotte Gardner for the purchase and transfer to him of all of said real estate. That in said negotiations said land was considered and figured at a value of about $100 per acre. That, when the time came for the transfer of said land to be made to your orator's husband, her said husband found himself unable to raise sufficient money to pay the amount that had been agreed upon as a first payment of the purchase price of said land. That, when informed of this condition of your orator's deceased husband's finances, the defendant, Schnuettgen, agreed with your orator's husband that upon payment to him of a sum equal to $250 per acre for the part of said land upon which were the buildings and other improvements, the said payment of $250 per acre to be considered as a payment upon the whole tract, he, the said Schnuettgen and Charlotte Gardner, would convey by warranty deed to your orator's husband the tract of land with the buildings and improvements, and would execute and deliver to your orator's husband a contract or bond for a deed for the remainder of said tract, in which said contract or bond for a deed it should be stipulated and agreed that, if at any time within five years from the date of said contract or bond for a deed your orator's husband should pay to the said Schnuettgen and Charlotte Gardner a sum equal to $70 per acre for the remainder of said tract, said John Schnuettgen and Charlotte Gardner would convey the same by warranty deed to your orator's husband, and that, pending such payment, the remainder of said tract was to be used and occupied by your orator's husband, for which use and occupancy he was to pay to said Schnuettgen rent at —————— per acre. That as a partial performance of said contract and agreement the said John Schnuettgen and Charlotte Gardner did on or about the 19th day of January, 1903, execute and deliver to your orator's husband a warranty deed for the part of said land upon which were the buildings and other improvements and which is described as follows, to wit: All that portion of the S. E. ¼ of section 32, township 81, range 39, which is situated southeast of the right of way of the Chicago, Milwaukee & St. Paul Railway Company across said quarter section, said land being bounded on the east by the east line of said section, on the south by the south line of said section, and on the northwest by the right of way of said railway company, but excepting from the above-described tract a strip of land commencing 5.80 chains east of quarter post of south line of said section, running thence east 5.85 chains, north 5.65 chains to the creek or branch thence down said creek to the place of beginning, the tract so conveyed containing 50 acres more or less, and upon his part and as part performance of his part of the agreement your orator's husband, Ernest Frank, paid the said Schnuettgen $12,500. That at the same time and as a part of the same transaction the defendant, John Schnuettgen, had prepared and delivered to your orator's husband what he informed them was the contract or bond for a deed for the remainder of said land, a copy of which deed to the fifty acres above described and the contract above referred to are hereto attached marked Exhibits A and B.

II. That, at the time your orator's husband paid said Schnuettgen the purchase price of the 50 acres, said Schnuettgen knew that your orator's husband understood and believed that he was purchasing the entire tract containing as above alleged about 300 acres of land, and that he was purchasing the land for a farm. That all of the buildings and improvements on the entire tract were located on the 50 acres, and that without the right to purchase the balance of the land in said section the 50 acres would not have been worth to exceed $150 an acre. That neither your orator's husband nor your orator understood or could speak the English language, which fact was well known to the defendant, Schnuettgen. That the contract or bond for a deed above referred to was written in English, and neither your

orator, who was present at the time, nor her deceased husband, could read said contract, but the said Schnuettgen stated that it contained the · agreement as above, and that not until some time after its execution did your orator's husband learn that there was no time fixed in said contract when the option to take conveyance of the remainder of said land would expire. whereupon your orator with her deceased husband called upon the defendant Schnuettgen and told him that they were ready to take conveyance of the remainder of said land, and desired to have the transfer made at once. That in response the said Schnuettgen stated that the contract was good for five years, that it was not necessary that it should be stated in the contract, and urged your orator's husband to wait until he had harvested another crop and until money was more plentiful before taking a conveyance of the remainder of said tract, and assured your orator's husband that his contract for a conveyance of said land would be good for five years.

III. That on or about March, 1904, your orator's husband with your orator, who was then his wife, and their family, entered into the possession of all of the above-described land, as well as the remainder of said land, to wit, all that part of the S. E. ¼ of section 32, township 81, range 39, lying northwest of the Chicago, Milwaukee & St. Paul Railway Company's right of way, except 11 acres in the southwest corner thereof containing 90 acres, more or less; also about 150 acres in the S. W. ¼ of said section 32, township 81, range 39, and continued in the possession and occupancy of all of said premises up to the time of your orator's husband's death, and your orator, with the family, have occupied the premises ever since and are now in possession thereof.

IV. That on or about the spring of 1905, and within a little over a year subsequent to the execution and delivery of the contract hereinbefore referred to, your orator's husband had made arrangements to procure the money to pay for the land on the terms stated in the contract and so notified the defendant, Schnuettgen, whereupon the said Schnuettgen informed your orator's husband that convey. ance could not be made at that time because the land had been leased for another year and urged and persuaded your orator's husband not to insist upon conveyance at that time, said Schnuettgen insisting that under the contract he was not bound to accept his money until the five years agreed upon had expired. That your orator's husband, being ignorant and not able to understand or read the English language, and not informed as to his rights, believed the said Schnuettgen, and, relying upon assurances of the said Schnuettgen that the option was good for five years, he did not further insist upon a conveyance.

V. That your orator's husband, Ernest Frank, died on or about the 1st day of November, A. D. 1905, leaving a will by the terms of which all of the property of the said Frank, both real and personal, was devised and bequeathed to this plaintiff, a copy of which is hereto attached, marked Exhibit C.

VI. That on or about the 16th day of January, 1906, this orator was duly appointed by the district court of Shelby county, state of Iowa, as executrix of the estate of Ernest Frank, and thereafter duly qualified and is still acting as such executrix.

VII. That on or about the ——— day of ——— Charlotte Gardner transferred and conveyed by deed all of her interest in and to all of the above land to the defendant, John Schnuettgen, and the said John Schnuettgen is now the owner of all of said land subject to the rights of your orator.

VIII. That on or about 1906 your orator notified the defendant, Schnuettgen, that she was ready to pay the $70 per acre as agreed for all the land above described, except the 50 acres, and tendered and offered to pay to the said Schnuettgen $70 per acre for the land, and demanded from the said Schnuettgen that he execute and deliver to your orator for herself and for the estate of Ernest Frank, her deceased husband, a deed to said premises under the option and agreement marked Exhibit B, whereupon the said Schnuettgen repudiated his said agreement to convey said land and refused to make any conveyance whatever.

IX. Your orator further states that, unless the defendant is compelled to perform his contract and convey the balance of said land at the agreed

price of $70 per acre, the estate of said Ernest Frank and your orator will be damaged in the full sum of $10,000.

X. Your orator states that she is remediless in the premises by the strict rule of the common law, and that she has no remedy save in a court of equity where said matters are properly cognizable, and to the end that your orator, Mary Frank, may have that relief to which she is entitled and that said defendants may answer the premises, but not under oath or affirmation, the benefit whereof is expressly waived by your orator, she now prays that upon official hearing, decree be entered requiring the defendant, John Schnuettgen, to convey to this orator the land hereinbefore referred to and described as follows, to wit, the S. E. ¼ of section 32, township 81, range 39 W., except the right of way of the Chicago, Milwaukee & St. Paul Railway Company, and one acre owned by Theodor Esser, and except about 50 acres owned by Maria Frank; also the S. W. ¼ of the S. W. ¼ of said section except a strip 366 feet wide along the south side thereof, and a tract of 6.11 acres heretofore sold to Wm. Muenchrath, and a tract of 3⅕ acres heretofore sold to J. B. Weiland, and 2 acres in the northwest corner thereof used as a cemetery; also about 2 acres in the southeast corner of the S. E. ¼ of the S. W. ¼ of said section known as "Grand View Park"; also the N. ½ of the S. W. ¼ and the S. E. ¼ of the N. W. ¼ of section 32 containing in all 244 acres, more or less, and that in case the said Schnuettgen is unable to make said conveyance or has disposed of said land that, then, your orator have judgment against the defendant, Schnuettgen, for her damages, to wit, in the sum of $10,000, and that such other and further relief may be granted in the premises as to your honors shall seem just.

## Exhibit A—Warranty Deed.

This indenture, made this 19th day of January, in the year of our Lord one thousand nine hundred and three, between John Schnuettgen and Mary Schnuettgen, his wife, of Shelby county, Iowa, and Charlotte Gardner and William Gardner, her husband, of the county of Hennepin and state of Minnesota, parties of the first part, and Ernest Frank of the county of Pierce and state of Nebraska, party of the second part, witnesseth:

That the said parties of the first part, in consideration of the sum of twelve thousand five hundred ($12,500.00) dollars to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell, and convey unto the said party of the second part his heirs and assigns forever, all that tract or parcel of land lying and being in the county of Shelby and state of Iowa described as follows, to wit:

All that portion of the southeast quarter of section thirty-two (32), township eighty-one (81) range thirty-nine (39) west 5th P. M. which is situated southeast of the right of way of the Chicago, Milwaukee & St. Paul Railway Company across said quarter section, said land being bound on the east by the east line of said section, on the south by the south line of said section, and on the northwest by the right of way of said railway company, but excepting from the above described tract a strip of land commencing 5–80 100 chains east of the quarter post on the south line of said section, running thence east 5–85–100 chains, thence north 5–65–100 chains to the creek or branch, thence down said creek to the place of beginning; said tract hereby conveyed containing fifty (50) acres more or less.

Parties of the first part are to retain possession of said premises until March 1, 1904, and to pay all taxes upon the same due at that date.

To have and to hold the same, together with all the hereditaments and appurtenances hereunto belonging or in any wise appertaining to the said party of the second part, his heirs and assigns forever; and the said John Schnuettgen and Mary Schnuettgen, Charlotte Gardner and William Gardner, parties of the first part for themselves, heirs, executors and administrators, do covenant with the said party of the second part his heirs and assigns that they are well seized in fee of the lands and premises aforesaid and have good right to sell and convey the same in manner and form aforesaid, and that the same are free from all incumbrances; and the above bargained and granted lands and premises, in the quiet and peaceable posses-

sion of said party of the second part, his heirs and assigns, against all persons lawfully claiming or to claim the whole or any part thereof, the said parties of the first part will warrant and defend.

Said Mary Schnuettgen and William Gardner hereby relinquish their right of dower in said land.

In testimony whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

|  |  |
|---|---|
| John Schnuettgen. | [Seal.] |
| Charlotte Gardner. | [Seal.] |
| William Gardner. | [Seal.] |
| Mary Schnuettgen. | [Seal.] |

### Exhibit B—Contract.

To Ernest Frank, Sir: We offer to sell you ninety acres more or less in the southeast quarter of section thirty-two (32), being all of said quarter section lying northwest of the Chicago, Milwaukee & St. Paul Railway Company's right of way, except eleven (11) acres in the southwest corner thereof (said eleven [11] acres consisting of a ball-ground and tenants premises and buildings adjacent thereto) for $70.00 per acre, on the following terms, to wit: You to pay us one-third cash, we to carry balance of purchase price for such time as may be agreed at 4 per cent. per annum, taking first mortgage on land to secure same, we offer you a like option to purchase all our remaining land in said section at same price and on same terms. We further agree to lease to you from year to year all or any of our lands in said section at the prevailing rates of rent. If we place any improvements upon the above described land after this date the cost of such improvements shall be added to said price of $70.00 per acre.     John Schnuettgen.
                                                                    Charlotte Gardner.

Dated January 19, 1903.

### Exhibit C.

I, Ernest Frank of Earling, Shelby County, Iowa, being of sound mind and memory, do make, publish and declare this to be my last will and testament, to wit:

First: All my just debts and funeral expenses shall be first fully paid.

Second: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Mary Frank, to have to hold to her, my said wife, and to her heirs and assigns forever.

Third: I nominate and appoint my said wife, Mary Frank, to be the executor, without bonds, of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof I have hereunto set my hand and seal this 31st day of October, A. D. 1905.                                Ernest Frank.

Signed, sealed, published and declared as and for his last will and testament, by the said Ernest Frank in our presence, who have at his request, and in his presence, and in the presence of each other, signed our names as witnesses thereto.     Anton Koester, Earling, Shelby County, Iowa.
                           Jacob Wilwerding, Earling, Shelby County, Iowa.

[1, 2] In order to clear the case of any complications by reason of the joint ownership of the land in question at the time of the making of the alleged contract, it is proper to say that the defendant, Schnuettgen, could lawfully make a contract to convey land owned by himself and another, and, if subsequently he became the sole owner of the land, he could be compelled to convey the same if the case was otherwise one for specific performance. It is first objected by counsel for defendant that Exhibit B is not a contract to convey, but a mere offer which Ernest Frank never accepted. We think that the allegations of paragraphs No. 2 and 4 of the bill clearly show that Frank did accept the offer contained in Exhibit B in his lifetime and

within the five-year period. It does not appear that Schnuettgen at any time objected to receiving payment in cash instead of a mortgage, but, on the contrary, it does affirmatively appear from the bill that Schnuettgen claimed that he was not obliged to receive the money for the land until the expiration of the five-year period which he alleged was the contract whether it appeared in Exhibit B or not. We think that in view of the allegations of the bill that Frank could not read or understand English we must take the oral declarations of Schnuettgen as to what Exhibit B did contain as binding upon him. These allegations also render unimportant the time when Schnuettgen told Frank that Exhibit B specified five years as the time within which the offer should be accepted. Prior and cotemporaneous oral declarations concerning the subject-matter of a written contract are merged therein as to a party who knows or by the exercise of ordinary prudence can ascertain what is in the written contract. The complainant is not relying upon the terms of Exhibit B alone, but upon all the allegations of the bill which detail the actual transaction between the parties. Ernest Frank accepted the offer to sell within his lifetime and within the five-year period, and therefore became the equitable owner of the land offered to be conveyed, and this equitable ownership descended to his wife under his will, and she may now invoke the powers of a court of equity to have the contract enforced. Rutherford v. Green, 37 N. C. 121; Dougherty's Adm'rs v. Goggin, 1 J. J. Marsh. (Ky.) 373; Godfrey v. Dwinell, 40 Me. 94; Dawson v. Clay's Heirs, 1 J. J. Marsh. (Ky.) 165; House v. Dexter, 9 Mich. 246; Collins v. Vandever, 1 Iowa, 573; Laverty v. Hall's Adm'rs, 19 Iowa, 526; Putnam v. Tinkler, 83 Mich. 628, 47 N. W. 687.

[3] The consideration of the offer of Schnuettgen was the payment by Frank of $7,500 which will be entirely lost if complainant is not to prevail in this action and the reservation of rent for the use and occupation of the land. The objection that the contract is void for want of mutuality cannot prevail. The Supreme Court of Wisconsin, in Peterson v. Chase, 115 Wis. 241, 91 N. W. 688, speaking of so-called option contracts, used the following language:

"The principal objection urged by appellant is that the contract was not mutual, and will therefore not be specifically enforced. To this conclusion, as a general rule, many authorities can be cited, but the exceptions or apparent exceptions to it are so numerous, and so important, that the decided cases illustrating them now constitute an almost equal volume of authority. Among those exceptions are optional agreements to sell land at a specified price and terms within a fixed time, especially if supported by a good and executed consideration. Upon fundamental principles there seems to be no difficulty in supporting the validity of such agreements. In their ultimate analysis, they are but offers to sell, and, if accepted before withdrawal, become binding, because thereupon the other party becomes bound, and a complete contract arises, entirely mutual. Nor on principle is there any reason why the seller for a good consideration may not bind himself that the offer shall not be withdrawn before a specified date. A so-called option to purchase contains only the above elements, namely, an offer to sell, accompanied by agreement to hold such offer open. Beach, Mod. Cont. § 886 et seq.; Waterman, Spec. Perf. § 200; Willard v. Tayloe, 8 Wall. 557 [19 L. Ed. 501]; Brown v. Slee, 103 U. S. 828 [26 L. Ed. 618]; Guyer v. Warren, 175 Ill. 328, 51 N. E. 580; Cheney v. Cook, 7 Wis. 413; Wall v. M., St. P. & S. S M. R. Co., 86 Wis. 48, 56 N. W. 367."

The following cases sustain in its full extent the doctrine declared in the above opinion: Perkins v. Hadsell, 50 Ill. 217; House v. Jackson, 24 Or. 89, 32 Pac. 1027; Souffrain v. McDonald, 27 Ind. 269; Hawralty v. Warren, 18 N. J. Eq. 124, 90 Am. Dec. 613; Schroeder v. Gemeinder, supra, 10 Nev. 355. See, also, Fry on Specific Performance, § 291, and Wat. Spec. Perf. § 200.

[4] So far as the alleged offer depends upon oral statements, we are clearly of the opinion that the case is taken out of the statute of frauds by Frank taking immediate possession of the land and retaining such possession through himself and his heirs down to the present time. Upon all the allegations of the bill, we think there are sufficient facts alleged to call for the exercise of the discretion of a court of equity in favor of Mrs. Frank as prayed by her. Judgment of dismissal reversed, with directions to the trial court to overrule the demurrer, with leave to defendant to answer the bill if he is so advised.