# FIRST NATIONAL BANK OF HASTINGS v. CORPORATION SECURITIES COMPANY.[1]

February 5, 1915.

Nos. 18,996—(208).

**Finding — evidence — consideration for agreement.**

1. Finding that a written agreement, unilateral in form, to repurchase from plaintiff's assignor certain shares of stock assigned to him in the course of and pursuant to a general settlement between him, defendant and its president, was a part of such settlement, and hence supported by valid consideration, *held* sustained by the evidence.

**Finding — agreement of corporation.**

2. The evidence warranted a finding that the agreement was defendant's undertaking, notwithstanding the character of its president's signature thereto.

**Contract assignable.**

3. The agreement was assignable.

[1] Reported in 150 N. W. 1084.

**Specific performance — prosecution of action by assignee.**

4. Plaintiff, to which the stock was also assigned, being authorized by the assignment to enforce the agreement, and to deliver it and the stock to defendant upon payment of the specified price, and to receive and receipt for the latter, had the right to continue the prosecution of its action to enforce the agreement, though the debt to secure which the assignment was made was paid after the action was brought.

**Mutuality of obligation.**

5. The agreement to repurchase, being supported by the considerations involved in the general settlement, did not lack mutuality of obligation; nor was it wanting in mutuality of assent of parties.

**Specific performance — mutuality of remedy — decree.**

6. Plaintiff having elected, within the time prescribed, to sell the stock back to defendant, and having made proper and sufficient tender of the stock and agreement, both before the bringing of the action and on the trial thereof, the fact that the agreement theretofore was lacking in mutuality of remedy did not deprive the court of the power to decree its specific performance.

**Specific performance.**

7. Mutuality of remedy is not the sole test of specific enforceability, and is not always essential thereto.

**Same.**

8. A contract for the purchase of shares of stock may be specifically enforced at the instance of the seller, where the difficulty in ascertaining the value of the stock is such that his remedy by action at law to recover damages for breach of contract is inadequate.

**Same — uncertain value of stock — finding.**

9. The finding of the trial court that the stock in suit was of such uncertain value as to warrant specific enforcement of defendant's contract to purchase it, sustained.

Action in the district court for Hennepin county for specific performance of an agreement to repurchase bank stock or to recover $2,250. The case was tried before Hale, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Laybourn & Lucas,* for appellant.

*Brown & Guesmer,* for respondent.

PHILIP E. BROWN, J.

Action to enforce specific performance of an agreement to buy shares of stock. The complaint was sustained on demurrer in 120 Minn. 105, 139 N. W. 296, where its allegations are fully stated. Subsequently defendant answered, denying all its averments except the corporate existence of the parties, the cause was tried, and findings made for plaintiff. Defendant appealed from an order denying a new trial.

Prior to April 27, 1911, Doctor Bradford was a stock- and bondholder in defendant. On that day he and the company, acting through its president, Mr. Lambrecht, entered into an agreement with the view of the former severing his relations with the latter and also certain business connections theretofore existing between him and Lambrecht personally. This result was accomplished by Bradford turning over to defendant and Lambrecht his stock in and bonds of the company, together with other securities, and conveying certain lands; in consideration whereof certain securities and shares of stock not involved in this suit were delivered to Bradford. As a part of the same transaction the 15 shares of stock in the Crocker bank here involved were also assigned to him; and plaintiff claims that, prior to the consummation of the transaction and as a part of it, defendant executed the instrument sought to be specifically enforced, which was written on defendant's letterhead, and reads as follows:

"Dr. E. B. Bradford,                                          April 27, 1911.
    "Hudson, Wisconsin,
"Dear Sir:

"On or before August 1st we agree to purchase back from you the 15 shares of stock in the Crocker State Bank, Crocker, South Dakota, transferred today from James J. Lambrecht to yourself at a price of $150 per share. The Capital Stock of said Bank is $10,000 and its surplus is $5,000. We will not be bound by this agreement after August 10, 1911.

                        "Yours truly,
                        "James J. Lambrecht,
                                "President."

Defendant, while admitting the shares were assigned and delivered to Bradford at the same time the other transaction was closed, insists that the writing quoted was no part of it and not involved therein, but was executed as an aftermath to the entire agreement, without consideration, simply as voluntary evidence on the part of Lambrecht personally of the value of the Crocker Bank stock, and, while made on the same day and before the parties separated, was not written until the whole transaction was closed. The court resolved these contentions in plaintiff's favor, and also found that on April 28, 1911, Bradford assigned the instrument in suit, together with the shares, as collateral security for his debt, to plaintiff, who, on August 1, 1911, tendered defendant the shares and the agreement and demanded the purchase price, which was refused, such tender being thereafter repeated on the trial.

1. Defendant insists that the findings in these regards are not justified. We have examined the record and, under the settled rules applicable, find no ground for interference. The court's opportunity to judge of credibility of the witnesses is decisive on this question.

2. We hold the agreement to repurchase assignable; but defendant contends it was not its contract, but, at most, Lambrecht's individually; citing our cases to the effect that where the term "agent," "trustee," or the like, is affixed to a signature, *prima facie* it constitutes mere description of the person of the party so signing. Such, however, merely raises a presumption, and, considering the form of the agreement, the subsequent correspondence introduced in evidence, and the testimony of Mr. Lambrecht, the court was fully warranted in finding that it was defendant's undertaking. 1 Dunnell, Minn. Dig. § 2115.

3. During the trial it developed that several months after this action was commenced Bradford paid his indebtedness to plaintiff for which the stock had been pledged; but it retained the same and also the agreement to repurchase, and Bradford's assignment of the latter to plaintiff expressly authorized it to deliver the stock to defendant upon payment of $2,250, and to receive and receipt therefor, and also to enforce the agreement. Notwithstanding, therefore,

the payment of the debt, plaintiff had the right to continue the prosecution of the action. G. S. 1913, § 7674, and cases there cited.

4. Defendant urges that, even so, no valid and enforceable contract resulted, whereby it was bound to repurchase the shares from Bradford upon his election to sell them back to it within the time prescribed; the contention being that since, upon the trial, no agreement on his part to sell was established, the contract was unilateral and unenforceable for lack of "mutual assent by both parties,". and likewise for want of mutuality of obligation. But clearly there was the former, for both parties definitely agreed that defendant would repurchase the stock if Bradford elected to sell it within the prescribed time; and, as to mutuality of obligation, such is found in the conclusion of the court that the agreement to repurchase was a part of the general settlement between the parties. It is immaterial, therefore, so far as concerns mutuality of obligation, whether Bradford agreed to sell or not; for in any event there resulted in his favor an option, supported by a sufficient consideration, to resell to defendant within a certain time, which, by its terms, bound it to repurchase if he should so elect to sell. From this it follows that the only respect in which the agreement may be said ever to have lacked mutuality is that it was an option, enforceable at the exclusive election of one of the parties, and hence lacking in mutuality of remedy; and while defendant takes the position this renders it unenforceable specifically, such is not the law of this state, it being sufficient if mutual enforcement is practicable when performance is decreed, so that the court may "then be able to enforce all of the terms of the contract at once, *in praesenti,*" and "have the power to superintend the performance of the conditions of the contract by each of the parties, and in all its parts." Brown v. Munger, 42 Minn. 482, 486, 44 N. W. 519, 521. When plaintiff, exercising the option acquired, together with the stock, from Bradford, made tender, both prior to the bringing of the action and on the trial, the option, which up to that time was necessarily unilateral in form, became a bilateral contract, certain, definite, mutually binding and specifically enforceable. The Gregory Co. v. Shapiro, 125 Minn. 81, 86, 145 N. W. 791; Vent v. Duluth Coffee & Spice Co. 64

Minn. 307, 67 N. W. 70; Brown v. Slee, 103 U. S. 828, 26 L. ed. 618; Watts v. Kellar, 56 Fed. 1, 5 C. C. A. 394; Schnuettgen v. Frank, 213 Fed. 440, 444; Frank v. Schnuettgen, 187 Fed. 515, 109 C. C. A. 281; Western Timber Co. v. Kalama River L. Co. 42 Wash. 620, 628, 85 Pac. 338, 6 L.R.A.(N.S.) 397, 114 Am. St. 137, 7 Ann. Cas. 667; Beddow v. Flage, 22 N. D. 53, 59, 132 N. W. 637; Turley v. Thomas, 31 Nev. 181, 201, 101 Pac. 568, 135 Am. St. 667; Northern Central R. Co. v. Walworth, 193 Pa. St. 207, 213, 44 Atl. 253, 74 Am. St. 683; Pollock v. Brookover, 60 W. Va. 75, 53 S. E. 795, and note, 6 L.R.A. (N.S.) 403; Pomeroy, Specific Performance (2d ed.) §§ 167–169; 21 Am. & Eng. Enc. (2d ed.) 935; 36 Cyc. 625; 16 Harvard Law Rev. 72; 18 Id. 457, 20 Id. 57. The rule is well expounded in Peterson v. Chase, 115 Wis. 239, 241, 91 N. W. 687, 688, where it was said, with regard to specific enforcement of optional agreements to sell land:

"Upon fundamental principles there seems to be no difficulty in supporting the validity of such agreements. In their ultimate analysis they are but offers to sell, and, if accepted before withdrawal, become binding, because thereupon the other party becomes bound, and a complete contract arises, entirely mutual. Nor, on principle, is there any reason why the seller, for a good consideration, may not bind himself that the offer shall not be withdrawn before a specified date. A so-called time option to purchase contains only the above elements, namely, an offer to sell, accompanied by agreement to hold such offer open."

Again, in Doherty v. Rice, 186 Fed. 204, 213, it was said, with reference to a contract for the sale of corporate stock, which originally lacked mutuality of remedy:

"The objection of want of mutuality of remedy in the sense in which equity uses those terms no longer exists. Complainants seeking specific performance offer to perform on their part and unreservedly submit themselves to the court to decree whatever may be proper in enforcing the rights of the other party to the contract. If defendants accept their offer, complainants cannot afterwards retract it, and thus escape a decree in favor of the defendants. If,

on the other hand, defendants refuse the offer, and unsuccessfully resist specific performance, they cannot be compelled to perform unless performance of every stipulation of the contract for their benefit is likewise coerced from complainants. In either event complete enforcement of the legal and equitable rights of the parties will be effected by one comprehensive decree, and the defendant cannot be remitted to a court of law for the enforcement of any of their rights."

The facts of the case under consideration bring it within both of these expositions of the rule as to necessity of mutuality of remedy. Moreover, equity no longer regards this ancient maxim as inviolate where its application would accomplish injustice. Said Mr. Chief Justice Start, in Lamprey v. St. Paul & Chicago Ry. Co. 89 Minn. 187, 192, 94 N. W. 555, 557:

"The early equity doctrine that, if the right to specific performance of a contract exists at all, it must be mutual, was based largely upon notions of expediency, rather than upon any principle of abstract justice, and has been materially modified. The doctrine of this court is that, if a contract for the conveyance of real estate is supported by a valid consideration, and there is no other good reason why it should not be specifically enforced except the want of mutuality of remedy, it will be so enforced."

See also The Gregory Co. v. Shapiro, supra, 86; Eckstein v. Downing, 64 N. H. 248, 9 Atl. 626, 10 Am. St. 404. On principle this doctrine would apply equally where specific performance of a contract relating to personal property is sought.

5. Defendant also insists it was error to grant specific performance, because plaintiff had an adequate remedy at law. This subject received some consideration in Northern Trust Co. v. Markell, 61 Minn. 271, 63 N. W. 735, and Moulton v. Warren Mnfg. Co. 81 Minn. 259, 83 N. W. 1082, and an interesting discussion of the development of the equitable jurisdiction to enforce contracts of the nature here involved will be found in 135 Am. St. 689, note. The power of a court of equity, upon a proper showing, to grant relief in such cases is now universally conceded, and in 50 L.R.A.

501, note, the present state of the law in this regard is well stated, as follows:

"The general rule in this country is that a contract for the sale of corporate stock will not be specifically enforced, where the stock can be purchased on the market and its value can be readily ascertained, unless there is some special reason for the purchaser's obtaining the same, but where the shares are limited and not easily obtainable, or where their value cannot be readily ascertained, the contract will be enforced. The tendency seems to be towards a more liberal allowance of the remedy. In England it seems to be allowed almost as a matter of course, except in case of government stocks, in which case it has generally been refused." See also 2 Cook, Corp. (7th ed.) § 338.

In administering the remedy current authority regards the jurisdiction as flexible, depending largely upon the facts of each individual case, and not bound by hard and fast rules; a reasonable discretion being allowed in awarding relief, and in determining the right thereto the situation involved should be considered from a practical, rather than a theoretical, view point.

The inquiry, then, is whether the court's determination that the value of the stock was not readily ascertainable was unsupported by the evidence; and we cannot so hold. Crocker, South Dakota, where the bank issuing the stock was located, had about 150 inhabitants. Another bank, having twice as much business, was also located there. A large part of the surrounding country was suitable and used for grazing purposes only. Part of the tributary population consisted of a "drifting class," thus making bank loans and discounts extra-hazardous. The bank was organized in 1907, its capital being $10,000. Defendant and its officers held a majority of its stock, which was not listed in commercial reports, and only two or three sales thereof were ever made, these being between officers of the company or local people. The bank never paid a dividend. Its books showed a surplus of $4,619 on April 27, 1911, which was reduced to $3,473 on August 1, 1911, and the profits for the year preceding December, 1911, were $589. While, therefore, there was some testimony to the contrary, it is patent under

all the circumstances disclosed that the establishment of the value of the stock would involve not only the obviously difficult task of proving the value of the bank's assets, but also a speculative forecast upon its prospects; so that it is doubtful whether any basis could be laid upon which to found a reasonable approximation of market value. At least such could not be done without imposing an unwarranted burden on plaintiff.

We discover nothing inequitable in the relief granted, and find no reversible error.

Order affirmed.