MARGARET W. HAGLIN AND ANOTHER v. L. S. ASHLEY AND ANOTHER.[1]

May 15, 1942.

No. 33,206.

[1]Reported in 4 N. W. (2d) 109.

*Ernest A. Rich* and *Fletcher, Dorsey, Barker, Colman & Barber,* for appellant.

*Snyder, Gale & Richards,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiffs' suit to compel specific performance of an .agreement to sell certain shares of stock in Northwestern Casket Company resulted in findings and judgment against defendant Ashley. Although Ashley and Downer were both named as defendants, process could not be served upon Downer because he was a resident of New York, and he refused to become a voluntary party. Accordingly, we shall refer to Ashley as the defendant. His motion for amended findings being denied, judgment was entered, and he appeals.

As its name implies, the casket company, a domestic corporation, is engaged in the business of manufacturing and selling caskets. Nine thousand shares of common stock, at $50 per share

par value, have been issued and are outstanding. The stock has never been listed on any stock exchange. It has no established market value. The ownership is held by relatively few persons. The actual value of the stock, which is not readily ascertainable, is rather conjectural and problematical. Although the book value as shown by the corporation's last annual audit was $56.85 per share, defendant in his verified answer alleged that it was of the value of not more than $21 per share.

Stock ownership lies largely in the hands of two main groups. Plaintiffs', known as the "Williams group," represents the ownership of 2,882 shares; defendant's, known as the "Johnson group," represents 4,651 shares. The remaining 1,467 shares are held by divers persons not involved in this litigation.

Disagreement having arisen between the two principal groups, negotiations were carried on between them through their respective counsel, Mr. James I. Best representing plaintiffs' group, and Mr. Orren E. Safford the Johnsons. Both are lawyers of recognized ability and integrity. Oral negotiations had so far progressed between them that on March 27, 1941, defendant, through Mr. Safford, his attorney and duly authorized agent, wrote plaintiffs' firm of attorneys the following letter:

"Messrs. Best, Flanagan & Rogers,
    Rand Tower,
        Minneapolis, Minnesota.
        "Attention Mr. James I. Best
"Dear Mr. Best:

"Confirming the conversation I had with you today I advise you that Mr. Ashley and Mr. Downer offer to your clients to sell the shares of Northwestern Casket Company owned by them for $21.00 per share cash. *Mr. Ashley informs me that the purchasers of his stock must agree to purchase other stock on the same basis to the extent of 4,651 shares in all.*

"Mr. Ashley has authorized me to tell you that every facility will be extended to any persons your clients nominate to make an investigation of the value of the shares of the Company. With

this offer to sell is the offer to buy your clients' stock at the same price—that is, $21.00 per share.

"Yours very truly,

"Orren E. Safford" (Italics supplied.)

From the date of that letter until May 2, plaintiffs, with the knowledge and consent of defendant, employed an auditor to investigate the value of the stock by making an examination of the company's books and records and preparing an analysis of its accounts receivable. This having been done, on May 2, 1941, Mr. Best, in behalf of plaintiffs' group, wrote Mr. Safford as follows:

"Mr. Orrin E. Safford,

First National Soo Line Bldg.,

City.

"Dear Mr. Safford:

"Referring to your letter to me of March 27th, wherein you advised me that Mr. Ashley and Mr. Downer offered to my clients to sell the shares of Northwestern Casket Company owned by them for $21.00 per share cash, I wish to advise you that my clients accept such offer to sell and tender you the purchase price. Wish to further advise you that the purchasers of Mr. Ashley's stock agree to purchase other stock on the same basis to the extent of 4,651 shares in all.

"Yours very truly,

"James I. Best."

On that day plaintiffs and their counsel duly tendered to Mr. Safford, defendant's attorney and agent, $23,625 in cash, the purchase price of his 1,125 shares at $21 per share, and demanded performance. Ever since then plaintiffs have kept their tender good, and they are now and always have been ready, able, and willing to pay not only for the 1,125 shares owned by Ashley but likewise all the shares represented by his entire group.

The court construed the letter of March 27 as an offer to sell all the shares owned by Mr. Ashley "on condition that plaintiffs also agree to purchase other shares of said corporation on the same

basis to the extent of 4,651 shares in all, thereby giving the holders of such shares the opportunity to sell their shares on said basis if they should desire to do so"; and it construed the letter of May 2 as an acceptance of that offer, thus constituting a completed and enforceable contract.

The findings are challenged as being without support, in that the two letters do not constitute an agreement to sell and purchase; that no valid offer was ever made; that the letter of March 27 is a joint offer of defendant's and Downer's stock and that Downer never authorized said letter; hence that no valid joint offer was made; that Best, as plaintiffs' agent, knew that Safford either exceeded his authority or made a mistake in making it; that the purported offer of March 27 was never ratified by defendant; that even if there was a valid offer it was never validly accepted; and, lastly, that specific performance is an improper remedy.

1. We think that defendant's letter was an offer to sell his shares to plaintiffs on a stated condition. This is what his letter said: "Mr. Ashley and Mr. Downer offer * * * to sell the shares * * * owned by them. * * * *Mr. Ashley informs me that the purchasers of his stock must agree to purchase other stock on the same basis to the extent of 4,651 shares in all.*" (Italics supplied.) Mr. Safford acted in good faith in making the offer because defendant himself had instructed him to include Downer's shares. Mr. Downer owned only 100 shares, and his testimony is that he considered his holdings to be inconsequential. Granting that he had not given Mr. Safford the required authority and that defendant was not authorized to speak for him, that does not destroy the binding effect of defendant's own offer. The stated condition having been met by plaintiffs, we see no good reason for differing with the trial court's findings that not only did Mr. Safford have full authority from defendant to make the offer in his behalf, but also, as found by the court, that defendant ratified the deal after obtaining complete knowledge of all the facts. Recital of the evidence in such fashion as to convince defendant is a

task not likely of accomplishment, for, like the village school-master:

"In arguing too, the parson owned his skill,
"For e'en though vanquished, he could argue still."

After all, "it is not the province of an appellate court to demonstrate the correctness of a fact issue found by the trial court." Holmes v. Conter, 212 Minn. 394, 4 N. W. (2d) 106, 107; 1 Dunnell, Dig. & Supp. § 415a, and cases under note 49.

2. Considering the letters of March 27 and May 2 together, we think these "worked an integration of the verbal negotiations" theretofore had between the attorneys for the parties.

"In the eye of the law they constituted the contract between the parties. The consequences of these letters cannot be avoided by styling them, or one alone, as a mere memorandum. The purpose of confirming oral agreements by writing is to avoid misunderstandings, and all preliminary negotiations are understood to have been waived, abandoned, and merged into the writing." Steward v. Nutrena Feed Mills, Inc. 186 Minn. 606, 608, 244 N. W. 813, 814.

3. Much of what is now argued in defendant's brief is pure afterthought. Safford was not in doubt about the sufficiency of the tender, for he told plaintiffs' counsel when it was made, "Well, I guess you have bought something." At the trial, Mr. Rich, speaking for appellant, his client, said:

"The position of the defendant Ashley in this case is that there is no dispute about the letters that were written; there is no dispute about the tender that was made by the plaintiffs, in an amount sufficient, in the event there was a binding agreement to buy and sell this particular stock of Mr. Ashley's. It is the position of the defendant first, that there is no binding agreement justifying the court in granting specific performance on the facts of the instrument[s] themselves or the letters themselves."

We think that upon the facts presented the tender of performance by plaintiffs was a valid and binding one.

4. Nor are we impressed with the claim that specific performance is not a proper remedy because, as defendant claims, plaintiffs have an adequate remedy at law. This question was thoroughly considered and discussed in First Nat. Bank v. Corporation Sec. Co. 128 Minn. 341, 347, 150 N. W. 1084, 1087, where we said:

"The power of a court of equity, upon a proper showing, to grant relief in such cases is now universally conceded, and in 50 L. R. A. 501, note, the present state of the law in this regard is well stated, as follows:

" 'The general rule in this country is that a contract for the sale of corporate stock will not be specifically enforced, where the stock can be purchased on the market and its value can be readily ascertained, unless there is some special reason for the purchaser's obtaining the same, but where the shares are limited and not easily obtainable, or where their value cannot be readily ascertained, the contract will be enforced. The tendency seems to be towards a more liberal allowance of the remedy. In England it seems to be allowed almost as a matter of course, except in case of government stocks, in which case it has generally been refused.' See also 2 Cook, Corp. (7th ed.) § 338."

To the same effect is Falk v. The Dirigold Corp. 174 Minn. 219, 223, 219 N. W. 82, 84, where we said:

"But where the stock is not sold on the market and has no established market value, and its actual value is conjectural or problematical depending upon the outcome of the enterprise, specific performance may be enforced, as there is no definite basis for assessing damages. Unless the remedy in damages is both adequate and certain, a party entitled to receive shares of capital stock has the right to require that they be issued to him." (Citing cases.)

Viewing the facts from all angles, we think the trial court correctly disposed of the case and that its findings and judgment entered in conformity therewith should be and are affirmed.

Affirmed.

Mr. Justice Stone, absent on account of illness, took no part in the consideration or decision of this case.