## Charles A. Kimmel, Appellee, v. William A. Gray, Appellant.

### Gen. No. 6,121.     (Not to be reported in full.)

Appeal from the Circuit Court of Peoria county; the Hon. THEO-
DORE N. GREEN, Judge, Presiding. Heard in this court at the April
term, 1915. Affirmed in part and reversed in part. Opinion filed
November 5, 1915.

### Statement of the Case.

Bill by Charles A. Kimmel, complainant, against
William A. Gray, defendant, in the Circuit Court of
Peoria county, to enforce a written contract. The
action was originally at law, but after a demurrer had
been sustained, plaintiff obtained an order transfer-
ring the cause to the chancery side of the docket with
leave to file a bill against defendant, and to add code-
fendants. The bill when filed set out a written con-
tract between complainant and defendant from which
it appeared that the contract was in settlement of a
suit between complainant and one not a party to the
action.

It was therein agreed that Kimmel should dismiss
said suit, and should release Gray from any claims
which Kimmel had against him growing out of trans-
actions in stock, and should quitclaim to Gray and give
him the right of possession of certain described real
estate, and that Kimmel should assign to Gray a cer-
tain judgment Kimmel obtained against Charles D.
Dubois, which judgment Gray should use, if necessary,
in a certain matter and, if not so used, then that Gray
should reassign said judgment, or so much thereof as
might remain unsatisfied, to Kimmel. Gray therein
agreed to organize a corporation under the laws of
Arizona, with a capital stock of 500,000 shares of the
par value of $1 per share, of which 20,000 shares
should be delivered to Kimmel, out of 200,000 shares.
By this agreement certain specified mining properties

were to be transferred to the company named, and, if said judgment was not used by Gray, then he should reassign the judgment to Kimmel and said 20,000 shares of stock issued to Kimmel should be a settlement in full of the matters described in said contract, but if said judgment was used by Gray for the purposes specified, then Kimmel was to receive 5,000 more shares of said capital stock. Said stock was to be delivered within six months. The contract contained other provisions not material here. The bill averred that Kimmel had performed his part of said contract; that Gray did organize said mining company upon a capitalization of $500,000 divided into 500,000 shares; that Gray afterwards changed the name of said company to Mexico Development Company, and increased the capital stock to $5,000,000 divided into 5,000,000 shares, without adding anything to the assets of the company, and fraudulently issued to Kimmel only 20,-000 shares of said last-named capital stock, whereas Kimmel was entitled to 200,000 shares of said last-named company besides 50,000 more shares in lieu of the 5,000 shares of the first-named company which Kimmel was to receive for the use of the judgment, which judgment it was alleged Gray used and refused to account for and refused to reassign to Kimmel, though requested by Kimmel to do so. The bill further alleged that afterwards, by agreement between said Mexico Development Company and Gray on behalf of Kimmel, 200,000 shares of said last-named company were placed in the hands of Charles C. Dutch, as trustee, to abide the result of the pending suit, and that Dutch holds said stock in trust, subject to the adjustment of the rights of Kimmel and Gray in this litigation; that before the beginning of this suit at law Kimmel demanded said stock of Gray and also demanded that the company withhold delivery to Gray of 230,000 shares of stock to which Kimmel was entitled and that Gray refused the demand. The prayer of the bill,

besides an injunction, sought to have 230,000 shares of said stock delivered to Kimmel. The bill was twice amended. Gray answered, alleging performance and denying Kimmel's construction of the contract. Dutch and the Mexico Development Company filed a joint answer, in which they denied that Dutch held any stock for the use of Kimmel. All the defendants alleged that Kimmel had an adequate remedy at law. The cause was referred to the master to take and report the evidence with his conclusions of law and fact. The master took and reported the evidence and reported that Kimmel had performed his part of the agreement; that Gray had performed his part of the agreement as to the 20,000 shares; that Gray had not used the judgment but had testified that he was ready to reassign it and that Kimmel was not entitled to any relief on account of said judgment; that said reorganization and increase of capital stock was made with Kimmel's knowledge and without objection by him; that 20,000 shares of the reorganized corporation was delivered to and accepted by Kimmel, but under a protest and claim that he was entitled to 230,000 additional shares; that this claim by Kimmel had not been established with sufficient definiteness to justify a decree therefor; that Kimmel could have readily purchased upon the market said shares of stock and has a complete remedy at law, and that a court of equity is without jurisdiction; that after notice from Kimmel the board of directors of the company voted to retain 200,000 shares of the stock owned by Gray to await the outcome of this litigation, and issued said stock to Charles C. Dutch, and that Gray as a director voted for such action, but that this action was taken to protect the company and was not in trust for Kimmel. The master overruled objections by Kimmel to said report and these were renewed as exceptions before the Circuit Court. The Circuit Court decreed that Dutch should transfer to Kimmel 180,000 shares of said stock

owned by Gray, and that Gray should reassign said judgment within ten days, and to that extent sustained the exceptions to the master's report.

From a decree sustaining the exceptions of the master's report in part and ordering that defendant Dutch transfer to complainant 180,000 shares of said stock owned by defendant Gray, and that defendant Gray reassign said judgment to complainant within ten days, defendant Gray appeals.

JUDSON STARR, for appellant.

W. S. KELLOGG, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

## Abstract of the Decision.

1. SPECIFIC PERFORMANCE, § 46*—*when equity will compel delivery of corporate stock.* Where stock which is easily obtainable in the market is contracted to be sold but is not delivered, the purchaser is left to his remedy at law for damages, no special reason appearing why such purchaser should have the particular stock contracted for, but where the value of such stock is not easily ascertainable, or is not readily obtainable elsewhere, or where some reasonable cause is shown why vendee should have that particular stock, equity will compel its delivery.

2. SPECIFIC PERFORMANCE, § 46*—*when delivery of stock having no market value compelled.* One who has a contract right to the delivery of particular stock should be permitted to maintain a bill to compel its delivery where the stock in question has no present market or other tangible value, never having been listed or offered on the market, and is only salable by one man having special skill in inducing persons of means to buy stock for pure speculation, especially where, owing to the fact that the company issuing the stock has no means of procuring the equipment necessary to operate its plant and is unable to get its product to market, it does not yet appear whether such product can be sold at a profit, since until all these things are accomplished such stock is not likely to have a market or other value which can be fixed or ascertained by the courts.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. EQUITY, § 23*—*when jurisdiction retained to grant specific performance of contract to deliver stock.* In a bill alleging that complainant assigned a judgment to defendant under an agreement that if the judgment was used by defendant in a certain manner defendant should deliver to plaintiff in full payment for such judgment a named number of shares of a particular stock, and where in his answer to the bill defendant denies that he so used the judgment, and offers to reassign it, complainant has the right to resort to a court of equity to obtain a determination of the controverted question as to whether defendant used the judgment in the manner agreed, and if it should be determined that he has not, to compel such reassignment in accordance with the terms of the agreement, defendant's offer in his answer to reassign not investing complainant with title to the judgment.

4. EQUITY, § 23—*when jurisdiction retained to administer further relief.* Where equity has jurisdiction it will proceed to administer all the relief required by the subject-matter of the action, notwithstanding the fact that as to part of the relief required complainant had an adequate remedy at law.

5. SPECIFIC PERFORMANCE, § 93*—*when decree requiring delivery of specified number of shares of stock erroneous on complainant's theory.* In a bill to compel the delivery of shares of particular stock under a contract whereby complainant was entitled to receive 20,000 shares of the stock of a corporation to be formed by defendant, which should be authorized to issue 500,000 shares, of which 400,000 shares should remain in the treasury and 100,000 shares be taken by stockholders, where the capitalization was later increased tenfold, but the proportion of stock retained in the treasury and that issued to stockholders was the same as that of the original capitalization, and where complainant claimed to be entitled to the same proportion of stock under the increased as under the original capitalization, a decree that defendant deliver to complainant 180,000 shares of such stock, *held* erroneous on complainant's theory, complainant claiming to be entitled to one-tenth of the total increased capitalization, or 100,000 shares, and it appearing that 20,000 shares had been received by complainant, the amount which should have been decreed to him on his own theory being 80,000 shares.

6. SPECIFIC PERFORMANCE, § 91*—*when evidence insufficient to sustain claim in bill for additional shares of stock.* In a bill to compel the delivery of shares of particular stock of a corporation to be organized by defendant, where it appeared under a written contract that a named number of shares of such stock had been delivered as provided therein, but complainant alleged that the capitalization of the corporation had been increased by defendant without adding

to its assets, and that under a verbal agreement made with defendant after the execution of the written contract plaintiff was entitled to an additional number of shares of such stock, such additional number claimed bearing the same proportion to the total capitalization as increased as the number of shares delivered bore to the original capitalization, evidence *held* insufficient to sustain the claim made in the bill.

7. SPECIFIC PERFORMANCE, § 13*—*when agreement for delivery of additional shares of stock too uncertain to be enforceable.* In a bill to compel the delivery of shares of particular stock, an agreement alleged in the bill that defendant verbally agreed to deliver a number of shares of such stock in addition to the number already delivered under a written contract, which additional number should bear the same proportion to the total capitalization as the number actually delivered bore to the original capitalization, *held* too indefinite and uncertain to be enforced by a court of equity.

8. CORPORATIONS, § 169*—*when person not in possession of stock certificate a stockholder.* Where a person is shown by the records of a corporation to be a stockholder therein, and such person acts as such stockholder after the organization of such corporation, and obviously considers himself a stockholder, he will be regarded as such although he never had manual possession of the stock certificate, it appearing that in pursuance of a contract such certificate was duly made out in his name and delivered to another person to be delivered to such stockholder, but never actually delivered.

9. CONTRACTS, § 309*—*what constitutes performance of contract to deliver stock.* A contract for the delivery of shares of particular stock is fully performed, although manual possession of the certificate of such stock is never delivered to vendee, where it appears that the certificate was duly made out by the proper officers of the company issuing the stock and delivered to vendor to be delivered to vendee, and afterwards vendee acted as such stockholder, and obviously considered himself such.

10. SPECIFIC PERFORMANCE, § 77*—*when necessary that bill allege conversations taking place after execution of contract.* In a bill to compel the delivery of shares of particular stock where the bill relies on a contract set out therein, rights based on oral conversations which took place after the execution of the contract cannot be taken advantage of without some pleading alleging such rights.

11. SPECIFIC PERFORMANCE, § 13*—*when equity will not enforce oral contract.* An oral contract which is uncertain in its terms and which is not adequately proved will not be enforced by a court of equity, although properly pleaded.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

12. CORPORATIONS, § 83*—*when consent of minority stockholder not necessary to increase of capital stock.* The consent of a stockholder owning a small minority of the stock is not necessary in order to enable a stockholder owning a large majority of the stock to increase the capitalization, although such minority stockholder received no additional shares when the capitalization was increased, and although such majority stockholder received a large number of additional shares, where it appears that all minority stockholders were treated alike, and the evidence shows that such majority stockholder had conveyed valuable property to the corporation in return for the additional stock received by him.

13. SPECIFIC PERFORMANCE, § 91*—*when evidence sufficient to show that judgment not used as contemplated in contract.* In a bill to compel the delivery of shares of particular stock under a contract whereby complainant assigned to defendant a judgment and provided that if defendant used the judgment as provided by the contract defendant should deliver complainant a named number of the shares of such stock, but otherwise should reassign the judgment to complainant, evidence *held* to show that defendant did not use the judgment as provided in the contract.

14. SPECIFIC PERFORMANCE, § 93*—*when reassignment of judgment properly decreed.* In a bill based on a contract which provided that complainant should assign to defendant a judgment, which, if used by defendant in a manner provided by the contract, should be paid for as provided therein, and, if not so used, should be reassigned to complainant, a decree that defendant reassign such judgment to complainant, *held* proper, where it appeared from the evidence that the judgment was not used by defendant as contemplated by the parties.