ALBERT J. NASON v. R. D. BARRETT AND ANOTHER.[1]

June 21, 1918.

No. 20,953.

**Corporation — sale of stock — specific performance or action for damages.**

1. Where the value of capital stock in a corporation is not easily ascertainable, or the stock cannot be readily obtained elsewhere, or where it is of peculiar value to the plaintiff, specific performance of a contract for the sale thereof will be decreed, but if such stock is easily obtainable and there are no particular reasons why the purchaser should have the particular stock, he is left to his action for damages.

**Same — findings sustained by evidence.**

2. Evidence considered, and held, that the findings in favor of the plaintiff are sustained by the evidence.

[1]Reported in 168 N. W. 581.

Action in the district court for Ramsey county for specific performance of a written contract. The facts are stated in the opinion. The case was tried before Michael, J., who made findings and directed judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*O'Brien, Young, Stone & Horn* and *Hobart P. Young,* for appellant.
*Butler, Mitchell & Doherty,* for respondent.

QUINN, J.

Action in equity to enforce specific performance of a written executory contract between the plaintiff and defendant R. D. Barrett, for the sale of 400 shares of common stock of the Nokomis Coal Company. The trial court made findings and ordered judgment in favor of the plaintiff for the specific performance of the contract. Judgment was entered from which the defendant Barrett appealed.

The Nokomis Company was incorporated in August, 1912, with an authorized capital of $500,000 divided into 5,000 shares of $100 each. It issued 3,000 shares of its stock in payment for 3,000 acres of coal rights which were part of a 12,000 acre tract in the state of Illinois, owned by the Oneida Coal Company which plaintiff controlled. The Oneida Company sold 750 shares of said stock to J. E. Rutledge on the basis of $50 per share. Rutledge was a practical coal man, owning and operating several coal properties in that state. He became president and manager of the company, and the plaintiff secretary and treasurer.

In the spring of 1915, the capital stock of the Nokomis Company was increased to one million dollars, consisting of 7,500 shares of common stock and 2,500 share of perferred stock. Thereafter 1,395 shares of the preferred stock were issued to creditors in settlement of their claims, and 4,050 shares of common stock were issued in payment for the remaining 9,000 acres of the Oneida land, which the Nokomis Company purchased. There remained 450 shares of common stock unissued.

When Rutledge became a stockholder it was agreed that he should have one-fourth of the common stock. After the increase of stock in 1915 there had been issued, all told, 7,050 shares of common stock of which Rutledge owned but 750. He demanded an amount sufficient to bring his holdings up to one-fourth of the total. By letter dated

June 6, 1917, plaintiff proposed to convey to the company sufficient additional coal land to pay for the 450 shares of unissued common stock and place therewith 625 shares and turn the same over to Rutledge on the basis of $75 per share. This proposal was carried into effect so that Rutledge received enough stock to bring his holdings up to 1,875 shares, or one-fourth of the whole.

In June, 1916, the defendant Barrett entered into the written contract in question with the plaintiff, whereby he agreed to sell to the plaintiff, and the plaintiff agreed to purchase from him, 400 shares of the common capital stock of the Nokomis Company, represented by certificates numbered 47 to 50 inclusive, at the agreed price of $21,836, payable on or before December 4, 1919, with interest at the rate of 6 per cent per annum, Barrett to retain possession of the certificates until the entire purchase price therefor was paid. Shortly prior to the commencement of this action Barrett sold and delivered to the defendant Rutledge all shares of the common stock then owned by him, excepting 200 shares evidenced by certificates numbered 49 and 50 referred to, taking his note therefor.

On December 1, 1917, Barrett presented to the plaintiff, as secretary of the Nokomis Company, certificates numbered 47 and 48 referred to, and requested that the same be transferred upon the books of the company to J. E. Rutledge, which the plaintiff refused to do. On December 3, 1917, the plaintiff duly tendered to the defendant Barrett the full amount of the contract price with interest, for said 400 shares of stock, and requested the delivery of the same to him, which the defendant Barrett refused to do.

Affairs moved along with apparent smoothness between Nason, Rutledge and Barrett until November, 1917, when plaintiff proposed that the Nokomis Company purchase an additional tract of approximately 12,000 acres of undeveloped coal land, owned by the Osage Company, in which he held a controlling interest, at the same price at which it was carrying its other coal lands, to be paid for by an increased issue of the common stock of the Nokomis Company. To this proposition Rutledge objected, and he at once set out to secure a controlling interest in the stock, and during the month of November, 1917, purchased from divers stockholders something like 1,608 shares of stock at an

average cost of approximately $87 per share. During the same month the plaintiff purchased from divers stockholders 436 shares at an average cost of $105 per share. It was a race between Rutledge, the president of the company, on the one side, and Nason, the secretary and treasurer, on the other, for control, with Barrett holding the balance of power. On November 18, 1917, plaintiff wrote Mr. Christofferson, who was a stockholder and the attorney for the company:

"I am seeing more advantages in the Osage absorption the more I think of it. Be sure and have a day or part of one with J. E. (meaning Rutledge) here in Chicago, and then come on to New York. We must put this deal across. Leighton and Eaton will be for it. I have talked to Dick (meaning Barrett), and think he will. They will all be here on the 26th for a directors' meeting. Don't fail to casually mention to J. E. (Rutledge) that if the Osage is not taken in, I may feel it necessary to promote some operation on it, and provide an income, and of course it would be better not to have conflicting interests in the same field. Wire me New York what you are doing."

On the same day he wrote the defendant Barrett as follows:

"Just time for a line before we pull out. I have an idea that might interest you. We talked over the phone one day about your Nokomis stock. I know you wanted to sell, but do not want you to close out entirely. Why not make me a price, one-half of your $60,000.00, and if it seems right, I will try and organize a corporation and take it, and if we enlarge the Nokomis and take in the Osage, I will give you an option to take back the same. Thus you sell one-half and realize on it, and come back later, if you wish. Think it over. * * * "

To reach the 200 shares in question, evidenced by certificates 47 and 48, which Barrett had sold and delivered to Rutledge taking his note therefor, Rutledge was made a party defendant, but upon the trial Rutledge brought the certificates into court, indorsed to Barrett, to abide the result of the litigation, and the case was discontinued as to him.

The fundamental rules upon which this case must be determined are well settled. Where the value of stock in a corporation is not easily ascertainable, or the stock cannot be obtained readily elsewhere, or where

it is of peculiar value to the plaintiff in order that he may obtain a proper and legitimate control of the management of the corporation, or if there is some special reason for the purchaser's obtaining the same, such as prospective future increase in value, specific performance will be decreed; but if such stock is easily obtainable and there are no particular reasons why the purchaser should have the particular stock, he is left to his action for damages. Johnson v. Brooks, 93 N. Y. 337; Treasurer v. Commercial Coal Mining Co. 23 Cal. 391; Sherwood v. Wallin, 1 Cal. App. 532, 82 Pac. 566; Safford v. Barber, 74 N. J. Eq. 352, 70 Atl. 371; Deitz v. Stephenson, 51 Ore. 596, 95 Pac. 803; Sherman v. Herr, 220 Pa. St. 420, 69 Atl. 899; Kimmel v. Gray, 196 Ill. App. 406; Northern Trust Co. v. Markell, 61 Minn. 271, 63 N. W. 735; Moulton v. Warren Mnfg. Co. 81 Minn. 259, 83 N. W. 1082; Selover v. Isle Harbor Land Co. 91 Minn. 451, 98 N. W. 344; First Nat. Bank of Hastings v. Corporation Securities Co. 128 Minn. 341, 150 N. W. 1084.

In the instant case, the trial court found as facts: That the value of the stock in question is not easily ascertainable; that there is a prospect of large increase in its value in the future; that the stock is not readily obtainable elsewhere; that the ownership of the same involves control of the corporation. A majority of the court are of the opinion that the findings of the trial court are amply sustained by the evidence. The finding that such stock is not readily obtainable elsewhere is sustained by the fact that there are not 400 shares to be had, except from Rutledge or Nason or his friends. It is undisputed that the 400 shares would give Nason and his friends control. It also appears that the company had struggled under difficulties for a number of years at a loss, and that in the fall of 1917 it began to pick up and pay a fair dividend on the investment.

Judgment affirmed.