# BETHEL BLANKENFELD AND ANOTHER v. CHARLES SMITH.

188 N. W. (2d) 872.

July 9, 1971—Nos. 42753, 42754.

*Wurst & McDowell* and *Robert A. Wurst,* for appellant.
*Neil A. McEwen,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

These are appeals from judgments granting specific performance of oral agreements to sell shares of corporate stock.

On or about January 15, 1969, defendant, Charles Smith, agreed orally with plaintiff Bethel Blankenfeld to sell to her 67

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

shares of Arctic Enterprises, Inc., and to sell to plaintiff Charles Dicken 70 shares of stock of said corporation. The agreed price was $15 per share. Thereafter, Smith declined to go through with the agreements and the actions for specific performance followed. They were consolidated for trial and on appeal.

■ The first issue raised is whether the evidence supports the determination in each case that there was an oral agreement, enforcement of which was not barred by the statute of frauds. The evidence is undisputed that there was an offer made to each plaintiff by defendant, Charles Smith, relative to the sale of stock of Arctic Enterprises, Inc., and that these offers were accepted by plaintiffs. The number of shares to be sold was specified, as was the price. It is clear that in each case an oral agreement was made, but the question is whether enforcement is barred by reason of the statute of frauds. Minn. St. 336.8-319 states in part:

"A contract for the sale of securities is not enforceable by way of action or defense unless

\* \* \* \* \*

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

Defendant testified a number of times during the course of trial that he had made an agreement with each of the plaintiffs. This testimony clearly comes within § 336.8-319(d) and makes the oral agreement enforceable. Cases interpreting the above statute are nonexistent in this state, but a decision rendered under an identical Maryland provision held that where a party to an oral stock redistribution agreement conceded of record that the agreement existed, he could not urge that the agreement was oral and therefore unenforceable by reason of the statute of frauds. Oregon Ridge Dinner Theatre, Inc. v. Hamlin, 253 Md. 462, 253 A. (2d) 382.

■ The second issue presented is whether the contracts properly could be specifically enforced. The general rule is well established that a contract for the sale of corporate stock will not be specifically enforced if there is an adequate remedy at law, but may be so enforced if there is some special reason therefor.

"* * * [A] contract for the purchase or sale of corporate stock will be specifically enforced where there is some special reason for the purchaser obtaining the same, or where the shares are limited or not easily ascertainable, or where the value cannot be readily ascertained, or where, because of other special or peculiar circumstances, a remedy at law would not be adequate." Annotation, 22 A. L. R. 1032, 1038.

In 49 Am. Jur., Specific Performance, § 131, it is stated:

"* * * When, therefore, the corporate stock which is the subject of a contract of sale is of unknown and not easily ascertainable value, or is unobtainable in the open market or not readily procurable except from the defendant, a suit for the specific performance of the contract of sale may be maintained, the remedy at law in such a case being regarded as inadequate."

The Minnesota cases are in accord with these statements. In Northern Trust Co. v. Markell, 61 Minn. 271, 272, 63 N. W. 735, an action for specific performance of the sale of corporate stock, the court stated the general rule as follows:

"As a general rule, the specific performance of contracts relating to chattels will be denied, because the law affords adequate and complete redress in an action for damages. There are exceptions to the rule, of course. For instance, whenever the loss by reason of a violation of the contract cannot be correctly estimated in damages, or whenever, from the nature of the contract, a specific performance is indispensable to justice, a court of equity will not be deterred from interfering because the contract relates to personal property. And it has been held that specific performance may be decreed where the shares are limited, having no fixed or marketable value, are not quoted in the com-

mercial reports, nor selling upon the market, because, it was said, a judgment for damages at law might not afford adequate relief. But it is well settled that the only relief for the breach of contracts of which goods possessing an easily ascertainable value, as grain or cattle or shares, are the subject, lies in an action at law for damages."

Moulton v. Warren Mfg. Co. 81 Minn. 259, 83 N. W. 1082, involved an action for specific performance of a contract to sell corporate stock. The complaint alleged "the shares of stock of said corporation have had no fixed or marketable value, and have not been quoted in the commercial reports." The court held that a demurrer to the complaint should be sustained on the ground that it did not allege sufficient facts for specific performance.

In First Nat. Bank v. Corporation Securities Co. 128 Minn. 341, 150 N. W. 1084, a grant of specific performance of a contract for the sale of bank stock was sustained. The majority of the stock was held by the officers of the defendant and only two or three sales had ever been made, and these were between officers of the company and local people.

In Nason v. Barrett, 140 Minn. 366, 168 N. W. 581, specific performance of a contract for the sale of corporate stock was affirmed where the trial court found that the value was not easily ascertainable; that there was a prospect of a large increase in value in the future; that the stock was not readily obtainable elsewhere; and that the shares in question involved control of a corporation.

The case of Falk v. The Dirigold Corporation, 174 Minn. 219, 219 N. W. 82, did not involve a buyer-seller transaction for corporate stock, but concerned a contract under which plaintiff was entitled to one-tenth aliquot part of the total stock of a newly organized corporation. None of the common stock had been sold or offered for sale. It had no ascertainable value and its actual value was conjectural or problematical depending upon the outcome of the enterprise. Specific performance was granted.

Haglin v. Ashley, 212 Minn. 445, 4 N. W. (2d) 109, was an action for specific performance of a contract for sale of corporate stock. The trial court was affirmed where it appeared that the stock had never been listed on an exchange, had no established market value, and the total stock was held by relatively few persons.

We have reviewed the record in the light of these cases and are of the opinion that the findings of the trial court are sustained by the evidence. While the evidence discloses that there were a large number of shares outstanding, the only evidence adduced before the trial court indicated that no such shares were then available for sale except from the defendant. The evidence indicated that the stock was not listed on any stock exchange. The secretary of the corporation personally knew of no stock available for sale, and the Grand Forks office of the stock brokerage firm of Piper, Jaffray & Hopwood had none for sale. There was no evidence introduced that the stock was available other than from defendant, nor was there introduced evidence of value upon which a judgment for damages could have been based. Accordingly, on the record presented in these cases, the trial court's grant of specific performance must be sustained.

The judgment is affirmed.

Affirmed.