Steven D. BRAATEN, Appellant,

v.

MIDWEST FARM SHOWS, etc., et al.,
John Thill, Jr., etc., Respondents.

No. C9–84–1351.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Scott Richardson, Richardson & Richardson, Austin, for appellant.

James H. Manahan, Manahan, Partridge, Kurzman & Shapiro, Mankato, for respondents.

John Thill, Jr., pro se.

Considered and decided by RANDALL, P.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal from summary judgment entered in favor of Midwest Farm Shows and John K. Riles on appellant's claim for specific performance. The claim concerns an alleged oral agreement to sell an interest in the partnership to appellant. Summary judgment was ordered based on the statute of frauds and lack of authority to bind the partnership. We affirm on other grounds.

## FACTS

Midwest Farm Shows is a partnership formed in 1982 by Tommy Martin, John K. Riles, and John Thill, Jr. As stated in the partnership agreement, signed November 1, 1982, it was formed "for the purpose of developing, promoting and operating farm trade shows in the Midwest." The partnership put on a farm show in Peoria, Illinois in December, 1982, and a show in South Bend, Indiana in February, 1983.

Appellant Steven Braaten worked on both of these shows, earning a weekly salary as well as a share of the gross profits. For the South Bend show, he received a 25% share, equal to that of each partner. He claims that the partners promised him an interest in the partnership when one of them withdrew or retired.

In April, 1983, partner Tommy Martin indicated his intention to withdraw, and a buy-out agreement was negotiated. Braaten claims that terms of this agreement were reached on April 15, a Friday, but a written agreement could not be drafted for signature until the following Tuesday.

On April 16, a Saturday, Riles met with Thill. Both partners agree that they discussed the Martin buy-out agreement. Thill stated that they also discussed inviting Braaten to buy into the partnership. Following the meeting, Thill drove to the Braaten home, where he presented an of-

fer, by which Braaten would pay $20,000 over a four-year period, out of his share of the trade show profits.

Braaten accepted this offer the following day in a conversation with Thill. The buy-out agreement, which was signed on April 21, provided that the remaining partners would pay Martin $20,000 plus 10 per cent of the gross profits of the Peoria and South Bend shows through 1987. Riles, at some point during the week, informed Braaten that he had "changed his mind" about offering him an interest in the partnership. Shortly thereafter, Braaten stopped working for the partnership.

## ISSUE

Did the trial court err in ordering summary judgment for the partnership and Riles?

## ANALYSIS

The trial court based its order granting summary judgment on the statute of frauds and the lack of authority for Riles and Thill to bind the partnership to an agreement to let in Braaten. The court found enforcement of the contract barred by the statute requiring contracts not capable of performance within a year to be evidenced by a writing. Minn.Stat. § 513.-01(1) (1982). The court also found applicable the statute of frauds for the sale of personal property. Minn.Stat. § 336.1–206 (1982). Finally, the trial court determined that the approval of Martin was required for the agreement with Braaten.

Appellant by this action seeks an order of specific performance of the contract,
    thereby requiring defendants to take in
    plaintiff as an equal partner subject to
    plaintiff's obligation to pay a total of
    $20,000.00 * * *.
No damages are sought.

The partnership agreement provides for a partnership of indefinite duration. The agreement includes provisions for payment of partners upon death or retirement, which extend payment up to 5 years, out of profits of future shows, upon the apparent

assumption of partnership continuation. These provisions are similar to the buy-out agreement with Martin, which gives him a percentage of profits for a five-year period. The partnership agreement, however, provides as follows:

> If the partnership business is terminated as a result of a sale or liquidation, the liability of the continuing partners [for payments to the retiring partner] shall terminate upon such sale or liquidation.

■ We do not interpret the buy-out agreement as extending the term of the partnership to 5 years. There is no indication that the partners intended to bind the partnership to a definite term. The proviso quoted above is persuasive evidence to the contrary.

■ Since the partnership is of an indefinite duration, dissoluble at any time by the will of any partner, the partnership agreement, and therefore the agreement to take in Braaten, are capable of performance within a year. The test is not whether such performance is likely, but whether it is possible. *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 375 (Minn.Ct.App.1984). Where no definite time is fixed for the continuance of a partnership, it continues at the will of the partners, and the statute of frauds is not applicable. *Stitt v. Rat Portage Lumber Co.*, 98 Minn. 52, 107 N.W. 824 (1906).

■ This characteristic of indefinite duration, however, makes this partnership agreement inappropriate for specific performance. Before specific performance can be granted, a contract must be certain and complete. *Furuseth v. Olson*, 297 Minn. 491, 492, 210 N.W.2d 47, 49 (1973). In regards to partnerships terminable at will, the following has been noted:

> the court will not enter upon so vain an undertaking as to compel a party to go into a partnership where the agreement is silent as to its duration, and where, therefore, it may be dissolved at the will of either as soon as formed.

*Rowley on Partnerships*, 251 (2nd ed. 1960) (*quoting Buck v. Smith*, 29 Mich. 166, 18 Am.Rep. 84).

Even if specific performance were available to compel respondents to enter into a partnership, a fiduciary relationship, with Braaten, the remedy would be futile. Although the oral agreement with Braaten extends payment over a 4-year period, this agreement does not give a definite term to the partnership itself. Rather, the agreement is subject to the indefinite duration of the partnership, as expressed in the partnership agreement. Since any of the partners may withdraw at any time, performance of the agreement in accordance with the intent of the parties, *see, Furuseth v. Olson,* cannot be compelled.

■ Thus, although we disagree with the grounds stated in the trial court's order, the judgment entered must be affirmed. A decision is not to be reversed if it is correct although based on incorrect grounds. *Cambern v. Hubbling,* 307 Minn. 168, 238 N.W.2d 622 (1976). There are no factual issues precluding summary judgment, and the legal issue of the availability of specific performance is squarely presented by the record on appeal.

## DECISION

The trial court did not err in ordering summary judgment against appellant on his claim for specific enforcement of an agreement to take him in as a partner, since the partnership was terminable at will, and its continuation could not be enforced.

Affirmed.