Duane J. HAYES, Appellant,

v.

NORTHWOOD PANELBOARD
COMPANY, Respondent.

No. C2–87–802.

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Jan. 28, 1988.

**688**

Brian B. O'Neill and Alan M. Anderson, Faegre & Benson, Minneapolis, for appellant.

Charles R. Powell, Powell, Lang & Schueppert, Bemidji, for respondent.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

PARKER, Judge.

Duane Hayes brought this action against Northwood Panelboard Company, alleging breach of contract, promissory estoppel, fraud and negligent representation resulting primarily from a letter written by Northwood's manager expressing its intention to purchase pulpwood from Hayes. Hayes appeals from the entry of the trial court's judgment and denial of Hayes' motion for a new trial. Before trial, the trial court granted partial summary judgment, ruling as a matter of law that if a contract existed between Hayes and Northwood, it was for an indefinite duration. At trial and after the close of the case, the trial court granted Northwood's motion for a directed verdict, dismissing Hayes' claims of promissory estoppel, fraud, negligent misrepresentation and punitive damages because of insufficient evidence to create a fact question for the jury. The case proceeded on the remaining breach-of-contract claim. The jury found that no contract existed, and judgment was entered for Northwood. The trial court subsequently denied Hayes' post-trial motion for a new trial and Hayes appeals. We affirm.

### FACTS

In 1979 Duane Hayes, together with Paul Hurd, formed H & H Lumber, which initially operated a sawmill and later expanded into the logging business. At about the same time, Northwood decided to build a plant near Bemidji, Minnesota, to produce waferboard, a plywood substitute. Brad Warren, Northwood's manager, was responsible for procuring pulpwood for that plant. Both Hayes and Hurd met with Warren in the summer of 1980 to discuss possible wood sales to Northwood. Although no agreement resulted from that meeting, Warren expressed Northwood's intention to make future purchases of wood from H & H Lumber.

Hayes and Hurd decided to split up their corporation in the spring of 1981, with Hayes taking over the logging operation. Hayes subsequently met with Warren because he was concerned that the division of the corporation might affect what he understood to be a prior oral agreement with Northwood for the purchase of pulpwood.

At the meeting, Hayes requested written confirmation of Warren's oral expression of intent to make purchases from Hayes. Shortly after the meeting, Warren drafted a letter which he mailed to Hayes.

The letter, dated April 29, 1981, states, in material part:

It is our intention, subject to construction delays or other unforeseen circumstances, to purchase 1,000 to 2,000 cords of aspen pulpwood from Mr. Duane Hayes during the summer of 1981. It is also our intention to purchase 5,000 to 7,000 cords of aspen pulpwood annually from Duane Hayes when our plant reaches full production, probably in the summer of 1981.

Northwood's purchases during the 1981–82 season were consistent with statements in the Warren letter. During the 1982–83 season, however, Northwood failed to purchase 5,000 to 7,000 cords from Hayes as suggested in the letter. In November 1982 Hayes complained to Warren about the deficient purchases and was told that Northwood did not consider the letter to be a binding contract, because Northwood did not enter into long-term contracts with loggers.

In May 1983 Hayes hired an attorney who wrote to Northwood stating that it should comply with the terms of Warren's letter or face legal action. Northwood thereafter refused to do business with Hayes. During meetings in July and August 1983, Warren informed Hayes that a condition of further business dealings between them was that Hayes terminate representation by his attorney and sign a release of any claims he might then have against Northwood. Hayes refused, commencing this action in June 1985.

Before trial, the trial court granted Northwood's motion for partial summary judgment, ruling as a matter of law that if a contract existed between Hayes and Northwood, it was for an indefinite duration. At trial the court also granted Northwood's motion for a directed verdict on Hayes' claims of promissory estoppel, fraud, and negligent misrepresentation, on the ground that any reliance by Hayes on Northwood's representations was unreasonable. The case then proceeded on Hayes' breach-of-contract claim alone. The jury found that no contract existed, and judgment was entered for Northwood. The trial court subsequently denied Hayes' post-trial motion for a new trial. Hayes appeals from the judgment entered on March 11, 1987, and the trial court's order dated March 30, 1987, denying his motion for a new trial.

## ISSUES

1. Did the trial court properly grant Northwood's motion for a directed verdict on Hayes' claims of promissory estoppel, fraud, negligent misrepresentation and punitive damages?

2. Did the trial court properly exercise its discretion in excluding evidence of a liability release and in admitting into evidence a graph illustrating Northwood's production?

3. Did the trial court properly rule and instruct the jury that if a contract existed between Hayes and Northwood, it was for an indefinite duration?

## DISCUSSION

### I

■■■ The trial court directed verdicts for Northwood on Hayes' promissory estoppel, intentional fraud, negligent misrepresentation and punitive damages claims. In reviewing a directed verdict, an appellate court must make an independent assessment of its appropriateness. *Citizen's National Bank of Willmar v. Taylor,* 368 N.W.2d 913, 917 (Minn.1985). A motion for a directed verdict presents a question of law for the trial court on whether the evidence is sufficient to present a fact question for the jury to decide. *Id.* A directed verdict should be granted only if, in light of all the evidence, it would be the trial court's duty to set aside a contrary verdict as manifestly contrary to the evidence or contrary to the law applicable in the case. *Id.* In considering the motion, the court must accept as true the evidence favorable to the adverse party and all reasonable

inferences which can be drawn from the evidence. *Id.*

To avoid a directed verdict, Hayes must set out cognizable claims of fraud and misrepresentation against Northwood. To prove a prima facie case of fraud, the plaintiff must show that

> defendant made a false representation of a past or existing material fact, susceptible of knowledge, knowing it to be false or without knowing whether it was true or false, with the intention of inducing the person to whom it was made to act in reliance upon it or under such circumstances that such person was justified in so acting and was thereby deceived or induced to so act to his damage.

*Berryman v. Riegert*, 286 Minn. 270, 275, 175 N.W.2d 438, 442 (1970). *See Kramer v. Bruns*, 396 N.W.2d 627, 630–31 (Minn.Ct. App.1986).

■ Statements made with an intent to act in the future are insufficient to constitute actionable fraud. For a misrepresentation to constitute fraud, there must be affirmative evidence that the promissor had no intention to perform at the time the promise was made. *Vandeputte v. Soderholm*, 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974).

In this case there is no evidence that Warren gave anything other than an indication of his intent to act in the future. Warren's letter of April 29, 1981, states: "It is also our *intention* to purchase 5,000 to 7,000 cords of aspen pulpwood annually from Duane Hayes *when our plant reaches full production,* probably in the summer of 1981" (emphasis added). There is no evidence that Warren did not intend to comply with the letter's intent when it was written on April 29, 1981.

Warren's initial intent changed as a result of events subsequent to the writing of his letter. In May 1983 Hayes' attorney wrote a letter threatening legal action if Northwood failed to comply with the Warren letter. Northwood's testimony and its production graph introduced at trial indicate that full production was not achieved until June 1983. Thereafter, Northwood refused to have further business dealings with Hayes.

■ When a promise is made in good faith with the expectation of carrying it out, the fact that it is subsequently broken does not give rise to a cause of action for fraud. *See Vandeputte*, 298 Minn. at 508, 216 N.W.2d at 147; *Benson v. Rostad*, 384 N.W.2d 190, 195 (Minn.Ct.App.1986) (a subsequent intention to break the promise or failure to fulfill it does not constitute fraud). Hayes has not met his burden of showing that Northwood had no intention to comply with the terms of its letter when it was written. The trial court properly granted Northwood's motion for a directed verdict on Hayes' claims of promissory estoppel, fraud, misrepresentation and punitive damages.

## II

Hayes also argues that the trial court committed prejudicial error when it refused to permit Hayes to introduce evidence of a liability release demanded by Northwood following threats by Hayes that he would take legal action to enforce the Warren letter. The trial court excluded the evidence under Minn.R.Evid. 408 after concluding that the release was part of a legitimate settlement offer.

■ Exclusion of evidence on the basis of relevancy rests within the trial court's discretion and is not grounds for reversal or a new trial unless it appears clear that there has been an abuse of discretion by the trial court. *Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972). The claim that Northwood had a contractual commitment by the terms of the Warren letter was vigorously disputed. The release was part of a settlement offer from Northwood. The evidence regarding release had strong potential to mislead the jury because the motive behind the offer could be misinterpreted by the jury. The trial court properly excluded the release.

■ Hayes also argues that the trial court erred when it allowed Northwood's production graph into evidence, because Northwood laid no foundation for it. The

admission of charts and summaries is a matter which rests within the trial court's discretion and will not be reversed by an appellate court unless this discretion is abused. *Adrian v. Edstrom*, 304 Minn. 52, 60, 229 N.W.2d 161, 166 (1975). Northwood introduced its production graph through Northwood's accounting supervisor. Warren also testified to the same information. In this context, the production graph was merely an illustration of information from earlier testimony. Given this prior foundation, any error in admitting Northwood's production graph was harmless. *Cf. Rice v. New York Life Insurance Co.*, 207 Minn. 268, 276, 290 N.W. 798, 801 (1940) (it was not error to receive into evidence a writing, the contents of which was shown by previous testimony). We find no error in the trial court's evidentiary rulings.

### III

Hayes also argues that the trial court erred in instructing the jury that if a contract existed between Hayes and Northwood, it was for an indefinite duration. If there are no material facts in dispute and the trial court correctly applied the law, the trial court's ruling on summary judgment must be affirmed. *See Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Minnesota statutes provide:

> Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

Minn.Stat. § 336.2–309(2) (1982).

Whether a contract contains an ambiguity presents a question of law for the trial court to decide. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). The construction and effect of a contract present questions of law for the trial court. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). It is for the trial court to construe the contract unless its interpretation depends on resolving contested extrinsic evidence. *Id.*

The April 29, 1981, Warren letter states: "It is also our intention to pur-chase 5,000 to 7,000 cords of aspen pulpwood annually from Duane Hayes when our plant reaches full production, probably in the summer of 1981." The letter is facially indefinite in that it states merely that the purchase will be done "annually." Hayes testified that his understanding of the contract was that it would be valid as long as the plant was in operation, an indefinite time, because there was no fixed time which Northwood anticipated to operate its plant. A contract having no definite duration term, expressed or implied, is terminable by either party at will upon reasonable notice. *Benson Cooperative Creamery Association v. First District Association*, 276 Minn. 520, 526, 151 N.W.2d 422, 426 (1967). Because Warren's letter is indefinite as to its durational terms, the trial court properly ruled that any contract based on the letter was indefinite as a matter of law and could be terminated at will. This conclusion was also included in the trial court's jury instruction. We find no error in the trial court's ruling on the construction of the contract or in its subsequent jury instruction.

### DECISION

The trial court properly granted respondent's motion for a directed verdict on appellant's claims of promissory estoppel, fraud, misrepresentation and punitive damages. It did not abuse its discretion in its evidentiary rulings on the liability release or admission of Northwood's production graph. The trial court properly ruled that if a contract existed between the parties, it was for an indefinite duration and terminable at will.

Affirmed.