**GLACIAL PLAINS COOPERATIVE, formerly known as United Farmers Elevator, Respondent,**

v.

**CHIPPEWA VALLEY ETHANOL COMPANY, LLLP, successor to Chip-**

pewa Valley Ethanol Company, LLC,
Appellant.

A16-1626

Court of Appeals of Minnesota.

Filed June 12, 2017

Jason G. Lina, Fluegel, Anderson, McLaughlin & Brutlag, Chartered, Morris, Minnesota (for respondent).

Ian A.J. Pitz, Michael Best & Friedrich LLP, Madison, Wisconsin (for appellant).

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Kirk, Judge.

## OPINION

KIRK, Judge

We affirm the district court's entry of judgment against appellant following a court trial of respondent's breach-of-contract claim because the district court did not err by (1) rejecting appellant's argument that the parties' contract was terminable at will or (2) ordering appellant to specifically perform the contract.

## FACTS

This appeal arises out of a contractual dispute between appellant Chippewa Valley Ethanol Company LLLP (CVEC) and respondent Glacial Plains Cooperative (GPC). The parties' relationship stems from a grain-handling contract (the contract) executed on November 8, 1994.[1] At that time, CVEC anticipated opening an ethanol plant and was seeking additional equity to support the operation. The parties came to an arrangement, memorialized in the contract, whereby GPC would invest in CVEC in exchange for property next to the plant on which to build a grain-processing facility and the exclusive rights to handle grain for the plant.

The terms of the contract created an ongoing relationship between the parties after the ethanol plant and grain-processing facility were built. Paragraph 1 of the contract expressly provides: "It is the intent of the parties that this agreement shall continue indefinitely until either terminated by the terms of this agreement, or by the mutual agreement of both parties." Consistent with that expressed intent, numerous provisions of the contract provide for continuous performance by both parties. Paragraph 1 provides an initial per-bushel grain-handling fee of 3.2 cents, effective for the first three years of operations, with future fees to be negotiated for successive three-year periods. Paragraph 2 provides for GPC to purchase 200,000 shares of CVEC for $400,000, resulting in its part ownership of CVEC. Paragraph 3 provides for CVEC to transfer to GPC an eight-acre parcel for construction of the grain-handling facility and for the parties to share road-construction costs. Under paragraph 4(H) of the contract, GPC

---

1. The contract was executed by CVEC's and GPC's predecessors-in-interest. For ease of reference and because there is no dispute that CVEC and GPC succeeded to the rights and obligations under the contract, we use the parties' current names throughout this opinion.

agreed "to keep the facility operational, always maintaining the ability to provide enough grain to keep the ethanol plant at full capacity, in a timely manner." And under paragraph 6(B), CVEC agreed that GPC "shall be the exclusive grain handler to the ... plant, as long as it is complying with all warranties and agreements" and "continue[s] to be able to handle the full capacity of corn required to run the ... plant."

The contract does not include an express termination clause. However, paragraph 5 of the contract provides that, if GPC fails to perform its obligations under the contract, "[CVEC] shall have the right to declare that this contract has been breached." In the event of a declared breach, GPC has 30 days to cure. If the breach is unresolved, GPC must deed the real estate and grain-processing plant to CVEC in exchange for compensation determined by formula under the contract. Disputes over breaches by GPC under paragraph 5 are subject to arbitration.

The parties commenced operations in 1996 and proceeded under the contract for more than a decade before their relationship began to sour, resulting in litigation. In 2011, CVEC sued GPC, alleging breaches of the contract and seeking its termination. The 2011 action was submitted to arbitration, and a panel of arbitrators awarded damages to CVEC for one material breach but found that GPC did not otherwise materially breach the contract and did not order termination of the contract. In February 2015, the district court issued an order confirming the arbitrators' determinations in relation to the alleged breaches of the contract, but vacating the arbitrators' ruling on an exclusivity provision of the contract not subject to the arbitration clause.

In June 2014, after the arbitration panel issued its final award but before the dis-

trict court issued an order affirming in part and vacating in part that award, CVEC notified GPC of CVEC's intent to terminate the contract. In response, GPC initiated this action to preclude CVEC from repudiating the contract.

CVEC moved for summary judgment, arguing, inter alia, that the contract was one for an indefinite duration that could be terminated by either party at will. GPC opposed summary judgment, arguing that the contract was for a perpetual duration, unless and until GPC breached the contract and CVEC took over the operations under paragraph 5 of the contract. The district court denied CVEC's summary-judgment motion, reasoning that the contract was intended to continue indefinitely and that the parties' intent overcame the general rule that a contract of indefinite duration is terminable at will. The district court concluded that "the only way the Contract can terminate under its terms is if GPC defaults on its duties to CVEC. In other words, it is written so as to continue so long as GPC performs satisfactorily."

The district court subsequently held a bench trial and issued findings of fact, conclusions of law, and an order for judgment, requiring CVEC's specific performance of the contract. The district court found that CVEC, through its general manager who assumed that role in 2009, had engaged in a course of conduct aimed at "escap[ing] its obligations under a contract it felt was no longer to its economic advantage." The district court concluded that CVEC had "breached the contract by its unilateral attempt to terminate [it]," and that specific performance was the appropriate remedy because it could not "accurately determine the value of GPC's expectancy under the Contract."

CVEC appeals, challenging both the district court's determination that the con-

tract is not subject to termination at will and it's order for specific performance.

## ISSUES

I.  Did the district court err by determining that the contract is not subject to termination at will?

II.  Did the district court err by granting the remedy of specific performance?

## ANALYSIS

### I.  The district court did not err by determining that the contract is not terminable at will.

■ CVEC argues that the district court erred by entering judgment for GPC because the contract was for an indefinite duration and thus subject to termination at will by either party. On appeal from judgment following a bench trial, this court reviews findings of fact for clear error and conclusions of law de novo. *In re Distrib. of Attorney's Fees*, 855 N.W.2d 760, 761 (Minn. App. 2014), *aff'd*, 870 N.W.2d 755 (Minn. 2015). "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). Where there is a written contract, this court must look to the language of the contract to determine intent. *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). We "construe a contract as a whole and attempt to harmonize all of its clauses." *Id.*

The Minnesota Supreme Court has recognized the "general rule" that when a contract has "no definite duration, express or which may be implied," it is "terminable by either party at will upon reasonable notice to the other." *Benson Co-op. Creamery Ass'n v. First District Ass'n*, 276 Minn. 520, 526, 151 N.W.2d 422, 426 (1967) (citing 17 Am. Jur. 2d *Contracts* § 486 (1964)). This appeal centers on a dispute over whether "no definite duration" (or indefinite duration) in this context means only an unspecified duration (as GPC asserts), or if it also means a perpetual duration (as CVEC asserts). As the district court framed the issue, the question is whether, if the parties have clearly expressed their intent for a contract of perpetual duration, is that contract necessarily subject to termination at the will of either party? We agree with the district court that the parties' intent should prevail.

■ *Benson* recited the general rule for contracts of indefinite duration, but did not expressly address the issue raised in this appeal. As the district court in this case noted, however, the analysis and disposition in *Benson* are instructive. *Benson* involved a contract between two cooperatives, pursuant to which plaintiff was a member of defendant and defendant was obligated to pick up plaintiff's milk. Plaintiff sued after defendant stopped picking up the milk. Defendant argued that the parties' contract was one of indefinite duration, and thus terminable at will by either party. Plaintiff asserted that defendant was obligated to pick up the milk as long as plaintiff remained a member of defendant. The *Benson* court recited the general rule regarding contracts of indefinite duration, but then remanded the case for a factual determination of whether "this contract was terminable at the will of the Association on reasonable notice without cause" or "the evidence sustains a binding agreement that the Association would continue to pick up Benson's milk, of the required quality, so long as it remained a member of the Association." 276 Minn. at 528, 151 N.W.2d at 427. Thus, *Benson* supports the conclusion that the general rule regarding indefinite contracts applies only in the absence of a discernible intent about the duration of the contract.

CVEC relies heavily on two decisions from this court to argue that a contract of perpetual duration is terminable at will under Minnesota law: *Hayes v. Northwood Panelboard Co.*, 415 N.W.2d 687 (Minn. App. 1987), *review denied* (Minn. Jan. 28, 1988), and *Braaten v. Midwest Farm Shows*, 360 N.W.2d 455 (Minn. App. 1985). These cases are not helpful to our analysis.

In *Hayes*, this court held that a district court properly instructed a jury that, if there was a contract between appellant and respondent, it was a contract of indefinite duration. 415 N.W.2d at 691. The alleged contract in that case was a letter providing that it was respondent's "intention to purchase 5,000 to 7,000 cords of aspen pulpwood annually from Duane Hayes when our plant reaches full production, probably in the summer of 1981." *Id.* at 689. The appellant testified that "his understanding of the contract was that it would be valid as long as the plant was in operation," but the writing did not include that language. *Id.* at 691. This court held that "[b]ecause Warren's letter [i.e., the contract] is indefinite as to its durational terms, the trial court properly ruled that any contract based on the letter was indefinite as a matter of law and could be terminated at will." *Id.*

CVEC attempts to compare *Hayes* to this case by relying on Hayes's subjective understanding (that the contract would continue as long as the plant was in operation) of the alleged contract in that case. *See id.* at 689, 691. But because that "understanding" was not part of the written contract in *Hayes*, this court did not address whether a contract including such language would be of indefinite duration and subject to the general rule of at-will termination. Accordingly, *Hayes* is inapposite.

In *Braaten*, this court held that specific performance was not available to compel a partnership to add a new partner, when the partnership itself was for an indefinite duration and could be dissolved at any time. 360 N.W.2d at 457. At issue in *Braaten* was the appropriate remedy for the partners' breach of an alleged promise to make Braaten a partner when one of them withdrew or retired. *See id.* The litigated issue in *Braaten* was not the indefinite duration of the partnership agreement, and the opinion does not identify any durational language that was included in the partnership agreement. Rather the opinion states only that "[t]here is no indication that the partners intended to bind the partnership to a definite term." *Id.* at 457. Accordingly, *Braaten* too is inapposite.

CVEC also relies on caselaw from other jurisdictions to support its assertion that a contract of indeterminate duration is subject to termination at will. *See Trient Partners I Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704 (5th Cir. 1996) (applying general rule to contract that expressly provided it would "continue indefinitely"); *Jespersen v. Minn. Mining & Mfg. Co.*, 183 Ill.2d 290, 233 Ill.Dec. 306, 700 N.E.2d 1014 (1998) (same). Although those cases are factually comparable to this one, we conclude that they are contrary to Minnesota Supreme Court precedent and thus do not follow them. *See Midland Credit Mgmt. v. Chatman*, 796 N.W.2d 534, 536 n.3 (Minn. App. 2011) ("Only the decisions of the Minnesota Supreme Court and the U.S. Supreme Court are binding on this court.").

Both *Trient* and *Jespersen* seem to treat the general rule for contracts of indefinite duration as a rule of substance, rather than construction. *See Trient*, 83 F.3d at 709 (explaining that general rule is applied to avoid perpetual contracts); *Jespersen*, 233 Ill.Dec. 306, 700 N.E.2d at 1017 (noting that "perpetual contracts are disfavored"). This, as the district court noted, is contrary to our supreme court's guidance

that "[t]he cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). In relation to employment contracts, the Minnesota Supreme Court explained in *Pine River State Bank v. Mettille* that the rule of at-will employment is a rule of construction and that "cases which reason that the at-will rule takes precedence over even explicit job termination restraints, simply because the contract is of indefinite duration, misapply the at-will rule of construction as a rule of substantive limitation on contract formation." 333 N.W.2d 622, 628 (Minn. 1983). *Pine River* is persuasive evidence that our supreme court would similarly reject application of the general rule in contradiction to the parties' expressed intent.

CVEC alternatively argues that the contract's use of the term "indefinitely" in relation to its duration was intended by the parties to incorporate the general rule that contracts for an indefinite duration are terminable at will. *See Jespersen*, 233 Ill.Dec. 306, 700 N.E.2d at 1017 (crediting similar argument). We are not persuaded. The multiple provisions in the contract, read together, make clear that the parties intended a perpetual relationship. Importantly, the contract does not include a termination clause. Instead, it provides for continuing performance by both parties unless and until there is an unresolved breach by GPC, in which event the contract provides a specific procedure for the property on which the grain-processing facility sits to be returned to CVEC. We cannot conclude that the parties' use of the term "indefinitely" was intended to subvert these very specific provisions for continuing performance by permitting termination of the contract at the will of either party.

In sum, we conclude that the contract provides for a perpetual duration, and that the general rule for contracts of indefinite duration does not apply to render the contract terminable at will. Accordingly, the district court did not err by entering judgment for GPC on this basis.

## II. The district court did not err by ordering CVEC's specific performance of the contract.

■ "We review a district court's decision to award equitable relief, including specific performance, for abuse of discretion." *Dakota Cty. HRA v. Blackwell*, 602 N.W.2d 243, 244 (Minn. 1999); *see also Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977) ("Specific performance is an equitable remedy addressed to the discretion of the court."). A district court abuses its discretion when it acts under a misapprehension of the law, or when its factual findings are clearly erroneous. *Gams v. Houghton*, 884 N.W.2d 611, 620 (Minn. 2016).

■ "A party does not have an automatic right to specific performance as a remedy for breach of contract; the district court must balance the equities of the case and determine whether the equitable remedy of specific performance is appropriate." *Blackwell*, 602 N.W.2d at 244. Specific performance is most regularly granted to require conveyance of real estate. *See, e.g., Saliterman v. Bigos*, 352 N.W.2d 494, 496 (Minn. App. 1984) (outlining factors for consideration in determining whether to grant specific performance of a real-estate purchase agreement). But the remedy is available in other contexts under appropriate circumstances. *See, e.g., Blankenfeld v. Smith*, 290 Minn. 475, 479, 188 N.W.2d 872, 874 (1971) (affirming grant of specific performance in relation to contract for sale of stock).

In *Blankenfeld*, the supreme court affirmed a district court's grant of specific performance on a contract for the sale of company stock, adopting reasoning that is apt here. 290 Minn. at 477-78, 188 N.W.2d at 873-74. The court began with the general rule that contracts for the sale of stock could not be specifically enforced if there was an adequate remedy of law. But the court went on to observe that "whenever the loss by reason of a violation of the contract cannot be correctly estimated in damages, or whenever, from the nature of the contract, a specific performance is indispensable to justice, a court of equity will not be deterred from interfering because the contract relates to personal property." *Id.* at 477, 188 N.W.2d at 873-74. Because the stock involved was not regularly traded, and there was no other evidence from which a value could be assigned to the stock, the court concluded that specific performance was appropriately granted. *Id.* at 479, 188 N.W.2d at 874.

▮▮▮ The district court's order acknowledges the limited circumstances in which specific performance is appropriate, but persuasively explains why specific performance is warranted in this case. The district court found that "[t]he future of the ethanol industry is not easy to predict," and that "[a]fter hearing the parties' damages evidence and calculations, the Court is struck by the many variables and uncertainties at play—so many that the task of arriving at a just value of GPC's damages from CVEC's breach would be a shot in the dark." Thus, the district court found that it could not "accurately determine the value of GPC's expectancy under the Contract." In this case, the difficulty is not in placing a value on the services performed under the contract (as in *Blankenfeld*), but in determining *how long* GPC would continue to derive that value under the contract. Based on its express findings

that the future of the ethanol business is unknown, the district court appropriately reasoned that specific performance is the appropriate remedy.

CVEC argues that the district court was precluded from ordering specific performance because the contract was one of indefinite duration, citing *Braaten*, 360 N.W.2d at 455. As is explained above, however, *Braaten* is distinguishable because the contract in this case is not of indefinite duration in the sense that the duration is unspecified. In *Braaten*, an order of specific performance could be rendered ineffectual by the partners dissolving their partnership. In this case, CVEC cannot defeat the order for specific performance by unilaterally terminating the contract.

CVEC also argues that specific performance is inappropriate because it would be inequitable to CVEC and require cooperation and judicial supervision. The district court, which as the fact-finder has a better vantage point on these issues, considered and rejected these arguments. With respect to fairness, the district court found that a damages award would work an injustice on GPC, rather than the other way around. With respect to cooperation, the district court rejected the argument that the "contractual relationship is like a dead marriage, and if one party wants out you might as well allow it because the two are never going to get along" and that the parties are "two scorpions in a bottle" and "you can't mend the relationship." The district court reasoned:

> While CVEC may be a "person" in some legal senses, it is not a person that has emotions, spite, and grudges. For its managers and directors to behave as if it were would breach their duties to CVEC and its members. Therefore, they can be counted upon to behave reasonably upon learning the outcome of this litigation, not spitefully.

As the district court reasoned, the contract is between two business entities comprised of many of the same members. Under these particular circumstances, the district court did not abuse its discretion by determining that specific performance was not precluded based on fairness or manageability concerns.

## DECISION

The contract provides for continued performance by both parties unless and until GPC commits an unresolved breach. Because the parties' intent for a perpetual contract is clear from the language of the contract, the contract is not subject to the general rule that contracts of indefinite duration are terminable at will by either party. The district court did not abuse its discretion by ordering specific performance of the contract.

**Affirmed.**