HUDSON, Justice.
*235 Chippewa Valley Ethanol Company, LLLP and Glacial Plains Cooperative entered into a grain-handling contract that was to "continue indefinitely." Chippewa Valley sought to end the contract with Glacial Plains Cooperative on the ground that it was a contract of indefinite duration, terminable at will by either party. Glacial Plains Cooperative argued that the contract was perpetual in duration, not indefinite, and was therefore not terminable at will. The district court held that the contract was perpetual, not indefinite, and the court of appeals affirmed. We hold that the contract does not unambiguously express an intent to form a contract of perpetual duration, and is thus a contract of indefinite duration. Accordingly, it is terminable at will upon reasonable notice once a reasonable time has passed. We therefore reverse and remand to the district court for further proceedings consistent with this opinion.
FACTS
This case centers on a dispute over a grain-handling contract between Chippewa Valley Ethanol Company, LLLP (CVEC) and Glacial Plains Cooperative (GPC).[1] The contract, signed in 1994, provided that GPC would invest in the ethanol plant for which CVEC was seeking financing. In return, CVEC provided GPC with land to build a grain-processing plant next to the new ethanol plant, and agreed that GPC would be the "exclusive handler of grain to the [CVEC] ethanol plant, as long as it [was] complying with all warranties and agreements" and "continue[d] to be able to handle the full capacity of corn" CVEC required to run the plant.
Paragraph 1 of the contract states that "this agreement shall continue indefinitely until either terminated by the terms of this agreement, or by the mutual agreement of both parties." Paragraph 5 of the contract states that if GPC "default[s] or fail[s] to perform any of its obligations" under the contract, CVEC may declare, through written notice, that the contract has been breached. GPC then has 30 days to correct the breach. If GPC fails to correct the breach within 30 days, it is obligated to deed the land and the grain-processing plant back to CVEC. Disputes over whether GPC is in breach of the contract under paragraph 5 are required to be submitted to an arbitrator. The contract contains no other terms that would terminate the contract after the ethanol plant was built.
After signing the contract, CVEC and GPC had a productive working relationship for more than 10 years. The two organizations have "very significant overlap" in members, estimated to be 60-70 percent. In 2009, a new general manager took over at CVEC, and the relationship between the two organizations deteriorated almost immediately. In 2009, the two litigated disputed grain-storage charges, and the court of appeals eventually ordered *236 judgment in favor of GPC on the issue. Glacial Plains Coop. v. Chippewa Valley Ethanol Co. , No. A10-869, 2011 WL 382710, at *1, *5 (Minn. App. Feb. 8, 2011), rev. denied (Minn. Apr. 19, 2011). In 2011, CVEC sued GPC, seeking termination of the contract for alleged breaches. The matter went to arbitration, where CVEC was awarded damages for one material breach, but the arbitrators found that GPC had not materially breached the contract in any other way. The arbitrators did not order that the contract be terminated. After the final award by the arbitration panel, CVEC notified GPC of its intent to terminate the contract. GPC filed this suit against CVEC, seeking to block the termination of the contract.
After a bench trial, the district court issued extensive findings of fact and found that CVEC had wrongfully terminated the grain handling contract. CVEC appealed the district court's decision.
In a published opinion, the court of appeals affirmed the district court's decision. Glacial Plains Coop. v. Chippewa Valley Ethanol Co. , 897 N.W.2d 834, 836 (Minn. App. 2017). The court of appeals ruled that the intent of the parties should prevail over the general rule that contracts without definite duration are terminable at will upon reasonable notice. Id. at 840. The court was unpersuaded by the argument that the term "indefinitely" in the contract was intended to incorporate that general rule, and concluded that the contract provided for a "perpetual duration" and was not terminable at will. Id. We granted review.
ANALYSIS
I.
The core question before us is whether the contract between CVEC and GPC is one of perpetual duration or of indefinite duration. In general, contracts of perpetual duration are disfavored as a matter of public policy; thus, while we will enforce a contract that unambiguously expresses an intent to be of perpetual duration, we construe ambiguous language regarding duration against perpetual duration. See 1 Williston, Contracts 112-13 § 38 (3rd ed. 1957); accord Barton v. Idaho , 104 Idaho 338, 659 P.2d 92, 94 (1983) ; Petty v. Faith Bible Christian Outreach Ctr. , 584 N.W.2d 303, 306 (Iowa 1998) ; Paisley v. Lucas , 346 Mo. 827, 143 S.W.2d 262, 270-71 (1940) ; City of Billings v. Pub. Serv. Comm'n , 193 Mont. 358, 631 P.2d 1295, 1306 (1981) ; Bell v. Leven , 120 Nev. 388, 90 P.3d 1286, 1288 (2004) ; In re Miller's Estate , 90 N.J. 210, 447 A.2d 549, 553-54 (1982) ; Carolina Cable Network v. Alert Cable TV, Inc. , 316 S.C. 98, 447 S.E.2d 199, 201 (1994) ; MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr. , 362 Wis.2d 258, 864 N.W.2d 83, 93 (2015).
"Whether language in a contract is plain or ambiguous is a question of law that we review de novo." Storms, Inc. v. Mathy Constr. Co. , 883 N.W.2d 772, 776 (Minn. 2016). "The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations." Dykes v. Sukup Mfg. Co. , 781 N.W.2d 578, 582 (Minn. 2010). Here, we conclude the contract is ambiguous because the contract may reasonably be interpreted as being of perpetual duration or of indefinite duration.
Several contract provisions suggest that the parties contemplated a permanent relationship. The contract established that GPC would be "the exclusive handler of grain to the [CVEC] ethanol plant, as long as it is complying with all warranties and agreements[.]" GPC was deeded the land on which to build its grain-processing plant next to CVEC, and is required to deed the *237 land back to CVEC if it fails to cure a material breach of the contract. In signing the contract, GPC was required to certify that it understood and agreed that "the completion of the grain handling facility [was] an integral part of the ethanol plant" and pledged that GPC would "always maintain[ ] the ability to provide enough grain to keep the ethanol plant at full capacity, in a timely manner."
Yet any conclusion that the contract was intended to be one of perpetual duration must rely on some level of inference. Nowhere is such an intent clearly and directly expressed. Paragraph 1 states, "[i]t is the intent of the parties that this agreement shall continue indefinitely until either terminated by the terms of this agreement, or by the mutual agreement of both parties." The "until" phrasing suggests that the contract will continue forever unless there is a breach or mutual agreement to end the contract. These two methods of ending a contract are provided for by common law, see, e.g. , Minn. Ltd., Inc. v. Pub. Utils. Comm'n of Hibbing , 296 Minn. 316, 208 N.W.2d 284, 285 (1973) (mutual rescission); Marso v. Mankato Clinic, Ltd. , 278 Minn. 104, 153 N.W.2d 281, 290 (1967) (rescission as a result of material breach), so arguably the entire phrase indicates an intent for the contract to last in perpetuity. However, Paragraph 1 uses the word "indefinitely"-not "forever," not "perpetually," and not "permanently." While we do not impose a "magic words" requirement on contracts of perpetual duration, see Travertine Corp. v. Lexington-Silverwood , 683 N.W.2d 267, 272 (Minn. 2004), the use of the word "indefinitely" creates uncertainty as to whether the contract is meant to be of indefinite duration or perpetual duration. The language of the contract can reasonably be interpreted as expressing an intent for a contract of either indefinite duration or perpetual duration. Thus, this language is ambiguous. See Storms, Inc. , 883 N.W.2d at 776.
Because the durational language of the contract is ambiguous, we will construe it against perpetual duration. As there is no definite duration expressed in the contract, we conclude that the contract must be one of indefinite duration. A contract of indefinite duration is terminable at will upon reasonable notice to the other party after a reasonable time has passed. See Borg Warner Acceptance Corp. v. Shakopee Sports Ctr., Inc. , 431 N.W.2d 539, 541 (Minn. 1988) ; Benson Co-op. Creamery Ass'n v. First Dist. Ass'n , 276 Minn. 520, 151 N.W.2d 422, 426 (1967) ("The general rule is that a contract having no definite duration, expressed or which may be implied, is terminable by either party at will upon reasonable notice to the other."); cf. Minn. Stat. § 336.2-309 (2016). Because the parties' contract in this case is one of indefinite duration, it is therefore terminable at will by either party upon reasonable notice after a reasonable time has passed.
II.
We must next consider the appropriate method to determine whether a reasonable time has passed, such that a contract of indefinite duration may be terminated at will with reasonable notice. CVEC argues that given the 20-year length of the contractual relationship thus far, "as a matter of law" the contract must have already lasted a reasonable time. We disagree. A "reasonable time" is determined not by a specific number of years, but by the individualized circumstances surrounding each case. It is for the district court, sitting in its role as factfinder, to weigh the evidence and apply the law to determine whether a reasonable time has passed. We therefore remand this case to the district court for proceedings consistent with this opinion.
*238 CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed and remanded.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

The contract was originally signed between two predecessor organizations, United Farmers Elevator (now GPC) and Chippewa Valley Ethanol Company, LLC (now CVEC). For simplicity and consistency with the decisions of the trial court and court of appeals, we use the current names of the organizations throughout.