PLAINVIEW MILK PRODUCTS CO-
OPERATIVE, a Minnesota coop-
erative association, Plaintiff,

v.

MARRON FOODS, INC., a New York
corporation, Defendant.

No. Civ. 97–1005 (DSD/JMM).

United States District Court,
D. Minnesota.

May 10, 1998.

J. Aron Allen, Edward F. Fox, Doherty Rumble & Butler, St. Paul, MN, for plaintiff.

Eric J. Van Vugt, Quarles & Brady, Milwaukee, WI, Douglas B. Altman, Altman & Izek, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff Plainview Milk Products Cooperative for partial summary judgment seeking declaratory relief. Based on a review of the file, record, and proceedings herein, the court grants Plainview's motion.

## BACKGROUND

Plaintiff Plainview Milk Products Cooperative (hereafter "Plainview") is a Minnesota cooperative association with its principal place of business in Minnesota. Defendant Marron Foods (hereafter "Marron") is a New York corporation with its principal place of business in New York. The basis for the court's jurisdiction is 28 U.S.C. § 1332(a)(1).

On April 24, 1992, Plainview and Marron entered into a contract under which Plainview acquired from Marron and set up for operation a 20-year old Blaw-Knox Instantizer (also known as an "agglomerator"). An instantizer processes powdered milk through a series of moistening and drying stages in order to crystallize the product in preparation for dissolution in hot or cold liquids.

Pursuant to the agreement, Marron's Blaw-Knox Series 1500 Instantizer was transported from New York and reinstalled at Plainview's Minnesota facility. Over six months and $550,000 was required to relocate and upgrade the capabilities of the equipment, train Plainview's personnel, and obtain approval from the United States Department of Agriculture (hereafter "U.S.D.A."). As a result, the relocated machine was capable of producing not just instant nonfat dry milk, but also specialty blends of starches, gums, maltodextrin, protein and diet powders, and sweeteners. Plainview used the relocated equipment to process product for Marron according to production and cost formulas contained in their agreement. The Agreement also provided that either party could require Plainview to buy Marron's interest in the equipment five years after the beginning of operations.

The Agreement is alternatively referred to by the parties as a partnership agreement or joint venture. The provision at issue here is paragraph 11, which provides that

Five years after the completion of the installation, either party may, on notice, elect to require PLAINVIEW to buy MARRON'S 50% interest in the partnership equipment. PLAINVIEW and MARRON shall each designate an independent appraiser. A third appraiser will be chosen by the two selected appraisers. All associated appraisal costs shall be shared equally by MARRON and PLAINVIEW. Fifty (50%) percent of the average of the three appraisals shall be deemed the value of MARRON'S interest. Subsequent to said election, PLAINVIEW shall continue to process all orders presented by MARRON in accordance with the production cost schedules [detailed elsewhere in the agreement]. All other terms of this Agreement will remain in full force and effect.

Agreement, Exhibit A to Affidavit of Dallas Moe (Docket No. 32) at ¶ 11.

Plainview alleges that Marron regularly breached the Agreement by failing to pay its share of operation and maintenance expenses and to fully pay its invoices for product on a

timely basis.[1] Accordingly, Plainview commenced this action on April 2, 1997, in Wabasha County District Court, seeking to dissolve the partnership. Marron removed the case to federal court on April 28, 1997, pursuant to 28 U.S.C. § 1441. Plainview informed Marron on June 30, 1997, of its intent to exercise its option to purchase the instantizer.

In the Complaint,[2] Plainview alleges that Marron "has consistently exceeded the time periods in the Agreement for remitting payment to Plainview Milk, has unreasonably and [u]njustifiably credited amounts against the billings and made only partial and incomplete payments of regular invoices, and has consistently failed and refused to pay its share of the ordinary maintenance and repair expenses." First Amended Complaint (Docket No. 24) at ¶ 17. Plainview asserts claims for dissolution of the partnership, breach of contract, misrepresentation, promissory estoppel, mutual mistake and reformation, unjust enrichment, and account stated. Plainview also seeks a declaratory judgment that the Agreement is of indefinite duration and terminable at will after the initial five year term and Plainview is entitled to a reasonable and expeditious appraisal process. Marron asserts counterclaims for breach of contract, negligence, and breach of fiduciary duty, and also seeks an accounting.

Plainview now brings this motion for partial summary judgment seeking declaratory relief, asking the court to construe the parties' agreement and order that: (1) the Agreement is terminable at will after the initial five year period; (2) Plainview provided Marron with reasonable notice that the Agreement was to be terminated on October 31, 1997; and (3) Marron has failed to follow the appraisal provisions of paragraph 11 of the Agreement by not appointing a certified appraiser to complete an appraisal of the fair market value of the existing equipment and failing to go forward with the appointment of a third appraiser.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) A fact is material only when its resolution affects the outcome of the case. Id. at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. Id. at 250. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. See Anderson, 477 U.S. at 250–51, 106 S.Ct. 2505. If a Plainview fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element ren-

---

1. As pointed out by Marron, these allegations are not the basis of Plainview's current motion for summary judgment nor are they at issue here.

2. The court here is referring to the First Amended Complaint (Docket No. 24). The initial complaint sought only a dissolution of the partnership.

ders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### a. Termination and Notice

██ Because jurisdiction in this case is based on diversity, the court applies the substantive law of Minnesota. It is well-settled that where "no definite time is fixed during which a partnership is to continue, it is a partnership at will and may be dissolved at any time by any partner." *Swanson v. Lindstrom*, 151 Minn. 19, 185 N.W. 950, 951 (1921). *See also Elvgren Paint Supply Co. v. Benjamin Moore & Co.*, 948 F.2d 1082, 1084 (8th Cir.1991) (affirming district court finding that "in the absence of any express or implied agreement between the parties about the duration of the distributorship, the distributorship was of indefinite duration and, under Minnesota law, terminable by either party at will upon reasonable notice."); *Benson Co-op. Creamery Ass'n v. First Dist. Ass'n*, 276 Minn. 520, 151 N.W.2d 422, 426 (1967) ("The general rule is that a contract having no definite duration, expressed or which may be implied, is terminable by either party at will upon reasonable notice to the other."); *Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App. 1985) ("Where no definite time is fixed for the continuance of a partnership, it continues at the will of the partners[.]"). The same rule applies whether the parties are partners or involved in a joint venture. *Swanson*, 185 N.W. at 951.

██ At oral argument, counsel for defendant would not concede that the Agreement gave rise to a partnership between the parties. Overwhelming evidence, however, supports the existence of a partnership. First, defendant admitted in its answer to the First Amended Complaint that "the relationship created by the Agreement has been characterized as a 'partnership' from time to time." Answer to First Amended Complaint (Docket No. 25) at ¶ 22. Paragraph 9 of the Agreement itself states that "[t]he partnership established hereby shall always have the absolute right to all production capacity of the equipment over and above PLAINVIEW's current 550,000 pound monthly production and PLAINVIEW shall process all orders

obtained by MARRON." Exhibit A to Affidavit of Dallas Moe (Docket No. 32) at ¶ 9. In addition, paragraphs 10 and 11 of the Agreement expressly refer to the "partnership equipment." *Id.* at ¶¶ 10–11. In a November 17, 1997 letter, counsel for defendant expressly wrote "whether and on what terms the Agreement can be terminated and the partnership dissolved is for the court to decide in this litigation." Letter from Eric Van Vugt to Gregory Griffiths, Exhibit B to Affidavit of Edward Fox (Docket No. 33) at 1. The court therefore concludes that the relationship between the parties is indeed a partnership.

██ Paragraph 11 of the parties' agreement provides that, if either party elects to require Plainview to buy Marron's interest in the partnership equipment five years after installation, Plainview "shall continue to process all orders presented by MARRON in accordance with the production cost schedules [contained elsewhere in the agreement]. All other terms of this Agreement will remain in full force and effect." *Id.* at ¶ 11. Plainview argues that the agreement provides for an express five year term followed by an option to continue the relationship for an indefinite period of time, such relationship being terminable at will by either party upon reasonable notice. Marron responds that it was not the intent of the parties to end the relationship after the election to buy out the equipment, and the Agreement therefore was not terminable at will after October 31, 1997.

The court is not persuaded by Marron's argument. After the initial five year period, the Agreement unambiguously provides that Plainview shall continue to process Marron's orders for an indefinite duration. Because of this indefinite duration, the agreement is terminable at will. Even if the court did find the agreement ambiguous as to duration, extrinsic evidence supports the conclusion that the parties intended that either of them could terminate the arrangement after five years. The court notes a January 27, 1992, letter written by Matthew Pearson, Marron's President and sole-shareholder, to Dennis Breuer, Plainview's General Manager at the time of the agreement. There, Pearson wrote that,

in the event that the parties' relationship soured,

> after five years from date of equipment installation, either party may elect to return the parties to status quo. We each are entering this joint venture with a piece of equipment and independent business accounts. Upon reasonable notice of desire to dissolve our relationship, we would cease joint operations and part company.

Letter from Matthew W. Pearson to Dennis Breuer, Exhibit C to Affidavit of Dallas Moe (Docket No. 32). This is strong evidence of Marron's intent that the agreement be terminable at will after the initial five year period.

Marron contends that its intent was that even after Plainview purchased the equipment, Plainview would continue to process Marron's orders for an indefinite period.[3] Marron proffers the affidavit of Matthew Pearson, where he states that:

> Although I was willing to allow Plainview Milk to purchase the equipment after five years of operation, I wanted assurance that for an indefinite period thereafter, Plainview Milk would continue to process orders for my customers. This was a subject of discussion between myself and Dallas Moe's predecessor, Dennis Breuer, and he expressly agreed to this provision.

Affidavit of Matthew W. Pearson (Docket No. 35) at ¶ 4. Despite the January 27 letter, Marron contends that Pearson's affidavit is the only evidence of intent before the court. Pearson's self-serving affidavit is not convincing in light of the January 27 letter. Even if the Agreement were ambiguous, therefore, the court would still find that it was terminable at the option of either party after the initial five year period.

■ In order to properly terminate an at will contract, the terminating party must provide reasonable notice of the decision to terminate. *See, e.g., Sofa Gallery, Inc. v. Strat-*

*ford Co.,* 872 F.2d 259, 263 (8th Cir.1989) (holding that in distributorship terminable at will, " 'reasonable notice is that period of time necessary to close out the franchise and minimize losses.' ") (quoting *McGinnis Piano & Organ Co. v. Yamaha Intern. Corp.,* 480 F.2d 474, 479 (8th Cir.1973)); *Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687, 691 (Minn.Ct.App.1987), *rev. denied,* Jan. 28, 1988 ("A contract having no definite duration term, express or implied, is terminable by either party at will upon reasonable notice.") (citing *Benson Co-op. Creamery Ass'n,* 151 N.W.2d at 426).

■ Plainview argues that the Agreement was effectively terminated on October 31, 1997, because notice was provided far in advance of that date. Marron contends that even if the Agreement was terminable upon reasonable notice, Plainview's summary judgment motion should be denied because a genuine issue of material fact exists concerning when Plainview provided notice that it was terminating the Agreement and whether that notice was reasonable.

In analyzing Marron's argument, the court has examined a number of documents. These documents, dating back to April 1997, evidence an intent by Plainview to extricate itself from the partnership. First, the court notes Plainview's initial complaint dated April 2, 1997. There, Plainview alleged that it "is entitled to a decree of this Court dissolving the partnership between Plainview and Marron pursuant to Minnesota Statutes, Section 323.31."[4] Complaint at ¶ IX. Plainview asks "[t]hat the partnership be dissolved by decree of the Court pursuant to Minnesota Statutes, Section 323.31, and that the partnership affairs be wound up pursuant to the provisions of Minnesota Uniform Partnership Act." *Id.* The Complaint, while not as specific as the First Amended Complaint, is specific enough to provide notice of Plain-

---

3. Marron's argument that the processing arrangement was indefinite in duration after the initial five year period only buttresses the court's conclusion that the Agreement was terminable at will after October 31, 1997.

4. Minn.Stat. § 323.31 provides that "[o]n application by or for a partner the court shall decree a

dissolution" whenever certain conditions exist. These conditions include a partner becoming incapable of performing, a partner willfully or persistently committing a breach of the partnership agreement, or the partnership only being able to carry on at a loss.

view's intent to dissolve the partnership. *See Swanson*, 185 N.W. at 951 (holding that where plaintiff brought an action to dissolve a partnership and for an accounting, "[w]hether plaintiff had terminated [the partnership] before bringing the action is not important for, if he had not, bringing the action was an election to terminate it."). Indeed, nothing could send· a clearer message of intent to terminate and provide more reasonable notice of such termination than service of a complaint seeking as relief dissolution of the partnership.[5]

The Complaint was silent as to Plainview's desire to buy Marron's interest in the instantizer. Therefore, on June 30, 1997, Dallas Moe sent to Matthew Pearson a letter stating, in its entirety, that:

> This letter is to put you on notice that pursuant to paragraph 11 of [the agreement], Plainview Milk Products Cooperative hereby elects to buy Marron Foods 50% interest in the equipment effective October 31, 1997. Plainview designates P.N. Peterson, Inc. as it's [sic] appraiser. His address is P.O. Box 258 Butte Des Morts, WI. 54927. Please notify me who you designate as your appraiser so the third appraiser can be chosen as soon as possible.

Letter from Dallas Moe to Matthew Pearson, Exhibit B to Affidavit of Dallas Moe (Docket No. 32). The court agrees with Marron that this letter alone did not provide notice to Marron that Plainview wishes to terminate the partnership, but this is largely moot in light of the earlier-filed Complaint, which did provide such notice.

Even if the Complaint did not provide adequate notice, the record is replete with other evidence that Plainview adequately informed Marron of its desire to end the partnership. In a letter dated October 30, 1997, Plainview's former counsel informed Marron's counsel that "the agreement at issue terminates effective midnight October 31, 1997." Letter from Gregory J. Griffiths to Eric J. Van Vugt, Exhibit A to Affidavit of Edward Fox (Docket No. 33). This letter

certainly provided adequate notice of termination of the partnership, as evidenced by counsel for Marron's response:

> We disagree with your statement that the Agreement terminates effective midnight October 31, 1997, which is contrary to the very terms of the Agreement. Paragraph 11 clearly provides that the. relationship between Plainview and Marron Foods and the essential terms of the Agreement continue in full force and effect, even after purchase of the equipment by Plainview. Whether and on what terms the Agreement can be terminated and the partnership dissolved is for the court to decide in this litigation.

Letter from Eric J. Van Vugt to Gregory J. Griffiths, Exhibit B to Affidavit of Edward Fox (Docket No. 33). In a letter dated December 31, 1997, Moe informed Pearson that:

> although we adhere to our firm position that the Agreement was effectively terminated as of October 31, 1997, we have voluntarily continued to process your product in order to give you a more reasonable opportunity to transition to a new source of supply with a minimum of controversy, delay, and inconvenience.... Accordingly, this letter will serve as formal notice of Plainview Milk's position with respect to all of the following: ...
>
> 2. After the initial five year term, the duration of the Agreement is indefinite and subject to termination at will upon reasonable notice. Since June you (and subsequently your legal counsel) have been aware of our election to terminate the Agreement as of October 31, 1997. Accordingly, this letter will serve as your final, formal notice that any further monthly payments, processing of product and supply obligations will be conclusively terminated as of March 31, 1998. To the extent you have not already done so, we urge you to identify an alternative supplier as soon as possible within this final notice period.

Letter from Dallas Moe to Matthew Pearson, Exhibit E to Affidavit of Dallas Moe (Docket

---

**5.** Given that Matthew Pearson is an attorney licenced to practice law in two different states the court finds defendant's·argument that the notice provided by Plainview was not reasonable to be especially disingenuous.

No. 32). In addition to this record evidence, Plainview also contends that throughout the Spring and Summer of 1997 it provided Marron with regular oral notice of its intent to terminate the Agreement at the same time as the buy-out. Supplemental Affidavit of Dallas Moe (Docket No. 37) at ¶ 7.

The court finds that Plainview has provided Marron with reasonable notice of the termination of the Agreement. Plainview filed its complaint in early April 1997, six months before the end of the initial five year period. While Marron may not have agreed that the partnership was terminable at will after October 1997 and believed that Plainview's termination was wrongful, that does nothing to change the fact that Plainview's complaint served as notice of termination. Marron argues that a question of fact exists as to when it received notice. There is no question, however, that Plainview filed its complaint seeking dissolution of the partnership and Marron was served with a copy shortly thereafter. The court therefore finds that the partnership was terminated on October 31, 1998.[6]

**b. Appraisal**

The parties' agreement provides that in the event either party requires Plainview to buy Marron's "interest in the partnership equipment" after the initial five year period,

> PLAINVIEW and MARRON shall each designate an independent appraiser. A third appraiser will be chosen by the two selected appraisers. All associated appraisal costs shall be shared equally by MARRON and PLAINVIEW. Fifty (50%) percent of the average of the three appraisals shall be deemed the value of MARRON's interest.

Exhibit A to Affidavit of Dallas Moe (Docket No. 32) at ¶ 11.

█ Plainview alleges that Marron has breached the agreement and frustrated the appraisal and buy-out process by submitting a "quotation" which is not an appraisal of the fair market value of the existing partnership equipment but rather an estimate of the cost of an entirely new replacement system. Plainview contends that the "quotation" was not prepared by a certified appraiser and includes elements that are not part of the existing system, such as computerized controls. The two estimates of the equipment's value vary considerably. F.N. Peterson, Plainview's "certified appraiser," appraised the fair market value of the equipment at $140,000. Jens Peter Jenson, Marron's "uncertified appraiser," provided a $1,800,000 "quotation" for what Plainview alleges is an entirely new system bearing no resemblance to the equipment on site.

Marron responds that the intent of the parties has always been that any appraisal would take into account that the instantizer is assembled, in-place, in-use, and U.S.D.A. approved. Marron contends that it was never its intent that its interest could be bought for one-half the scrap value of the instantizer's components, which is how it characterizes the appraisal submitted by Plainview.

Plainview's primary objection to the appraisal submitted by Marron is that it is an estimate of a new replacement system and not an appraisal of the actual equipment in place at Plainview's facility. There is evidence in the record to support this allegation. In examining the "Quotation" submitted by Marron's appraiser, the court notes that the estimate includes freight to the plant site, installation of the equipment, and engineering and start-up assistance. In addition, the quotation includes delivery terms and expressly excludes such items as taxes, permits, and fees and the use of a crane or forklift for installation. *See* Exhibit G to Affidavit of Dallas Moe (Docket No. 32) at 13–14. These items bear no connection to the appraisal of an existing, operational machine, and serve as powerful evidence that Marron's appraiser was not providing an estimate of the value of the equipment in use at

---

6. While the Complaint provided reasonable notice in this case, Plainview continued to provide Marron with additional notice of its intent to extricate itself from the partnership throughout the Summer and Fall of 1997 and continued processing product for Marron through March 1998. Therefore, any argument Marron should make that it never received notice of termination is spurious. By the end of March 1998, Marron had been on notice for almost a full year that Plainview was not going to process Marron's product indefinitely.

Plainview's facility but instead of an entirely new replacement system. This inference is buttressed by the fact that the quotation incorporates features such as computerized controls that are not part of the system at place at Plainview's facility, and Marron's counsel acknowledged that "there may be several items that do not belong in the appraisal, which we will clarify and ·correct if necessary[.]" Letter from Eric Van Vugt to Edward Fox, Exhibit BB to Affidavit of Matthew Pearson (Docket No. 35).

Marron has acknowledged that the financial model to be employed to complete the appraisals called for by Paragraph 11 is the fair market value of the equipment in place:

> Marron believes that both parties should submit an appraisal of the fair market value of the Equipment currently in place, in use and in production as in Plainview's Milk facility. The appraisal should take into account the effort and expense necessary to ensure that the Equipment meets USDA requirements and the value should include the effort and expense necessary to ensure that the Equipment meets operating specifications and capacities.

Exhibit A to Supplemental Affidavit of Edward Fox (Docket No. 38) at 9. The aforementioned evidence indicates that the quotation submitted by Marron is not an appraisal of the fair market value of the equipment currently in place, but instead of a replacement machine. Plainview has submitted the report of Greg Mergen, who confirms that Marron's estimate is of the equipment's "'Replacement Cost New,' which is defined as '[t]he current cost of a similar new item, having the nearest equivalent utility as the item being appraised.'" Letter from Greg Mergen to Dallas Moe, Exhibit J to Affidavit of Dallas Moe (Docket No. 32).

While the Agreement is silent as to whether a "quotation" qualifies as an appraisal and whether the appraiser must be "certified," it is clear that paragraph 11 calls for an estimate of the value of the equipment currently in place and operating at Plainview's facility, as this is the "partnership equipment." While this value may be more than the scrap value of the equipment due to the fact that the equipment is operational and meets all U.S.D.A. standards, the plain language of paragraph 11 excludes the possibility that "partnership equipment" means the cost of a new replacement machine.

While the court takes no position on the actual value of the equipment, in light of the evidence that Marron's estimate may be based on a new machine and includes the cost of components not in the "partnership equipment," Plainview's request that Marron submit a new appraisal of the fair market value of the partnership equipment currently in-place, in-use, and in-production at Plainview's facility is warranted.

## CONCLUSION

Based on a review of the file, record, and proceedings herein, the court finds that the agreement between Plainview and Marron was terminable at will after the initial five year period, Plainview provided Marron with reasonable notice of termination, and the Agreement terminated on October 31, 1997. In addition, the court finds that Plainview's request that Marron submit a new appraisal of the partnership equipment is warranted. Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiff's "Motion for Partial Summary Judgment Seeking Declaratory Relief" is granted;

2. Within thirty (30) days of this date, Marron shall submit to Plainview an appraisal of the fair market value of the partnership equipment in-place, in-use, and in-production at Plainview's facility;

3. Marron shall cooperate in the identification and appointment of the neutral third appraiser to be chosen by the parties, own appraisers in order to expeditiously complete the appraisal and buy-out process set forth in paragraph 11 of the parties' Agreement.